799 F.2d 656
 15 Collier Bankr.Cas.2d 569, Bankr. L. Rep. P 71,479
In re Larry Wayne FIELDER, Debtor.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellee,
v.
Larry Wayne FIELDER, Defendant-Appellant.
 No. 86-7180
Non-Argument Calendar.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 5, 1986.
 
 Floyd Sherrod, Legal Services Corp. of Ala., Florence, Ala., for defendant-appellant.
 John R. Benn, Peck, Slusher & Bunch, Florence, Ala., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before GODBOLD, VANCE and JOHNSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Affirmed on the basis of the district court's Memorandum Opinion dated February 10, 1986, a copy of which is appended hereto.
 
 
 2
 AFFIRMED.
 
 APPENDIX
 
 3
 STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellant,
 
 
 4
 vs.
 
 
 5
 LARRY WAYNE FIELDER, Defendant-Appellee.
 
 
 6
 CIVIL ACTION NO. 85-AR-5538-NE.
 
 
 7
 United States District Court, Northern District of Alabama,
 
 
 8
 Northeastern Division.
 
 MEMORANDUM OPINION
 
 9
 State Farm Mutual Insurance Company appeals from a judgment entered by the United States Bankruptcy Court for the Northern District of Alabama on June 21, 1985, wherein that court held that the bankrupt, Larry Wayne Fielder, was discharged of a debt owed to State Farm. This court has jurisdiction of the appeal pursuant to Rule 8001 of the Bankruptcy Rules. The standard of review is established by Rule 8013 of the Bankruptcy Rules, which states:
 
 
 10
 On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witness.
 
 
 11
 This " 'clearly erroneous' standard for judicial review applies only to the bankruptcy referee's findings of fact, and the court is not bound by the referee's conclusions of law if they are found to be erroneous". In re Hardwick & Magee Co., 355 F.Supp. 58, 65 (E.D.Pa.1973). See, also, In re Panama-Williams Corp., 235 F.Supp. 729, 732 (S.D.Tex.1964) (a finding that the lower court's decision was clearly erroneous "can be made when the findings are unsupported by substantial evidence, contrary to the clear weight of evidence, or induced by an erroneous view of the law"); In re Gaites, 466 F.Supp. 248, 251 (M.D.Ga.1979) (same, quoting In re Panama-Williams Corp.). In other words, this court as an appellate court gives deference to all findings of fact by the fact finder if based upon substantial evidence, but freely examines the applicable principles of law to see if they were properly applied and freely examines the evidence in support of any particular finding to see if it meets the test of substantiality.
 
 FACTS
 
 12
 The controlling facts of the case were well and fairly stated by Judge Breland and are adopted by this court, as follows:
 
 
 13
 Late in the evening of Saturday, April 30, 1983, the debtor [Larry Wayne Fielder] went to a drinking establishment to play billiards and drank two beers. After midnight, he left for an undetermined amount of time, and returned to the establishment and consumed approximately ten additional beers. Early the next morning, May 1, 1983, the debtor began driving his Pontiac Bonneville automobile home. After crossing the bridge from Colbert County into Lauderdale County around 6:30 a.m., the debtor apparently failed to yield to an automobile driven by Ann Lamar, who was travelling west on Highway 72. An accident ensued, wherein Mrs. Lamar suffered several facial and cranial injuries and substantial property damage was inflicted on the automobile driven by Mrs. Lamar.
 
 
 14
 The investigating traffic officer noted that the debtor exhibited an unsteady gait and slurred speech at the scene immediately following the accident. The debtor was driving without a valid driver's license. A blood alcohol test was subsequently administered to the debtor, which revealed a blood alcohol content of .208. He was charged with driving under the influence, lack of valid driver's license and failure to yield to right of way. Said debtor pled guilty to the D.U.I. charge.
 
 
 15
 State Farm obtained a judgment in the Circuit Court of Lauderdale County for $45,309.00 against Fielder as a result of this automobile accident. The petition in bankruptcy was filed on July 26, 1984. On appeal from the bankruptcy court's finding of dischargeability State Farm says that to discharge this debt is contrary to the intent of 11 U.S.C. Sec. 523(a)(6). This court agrees with State Farm.
 
 CONCLUSIONS
 
 16
 Section 523(a)(6), Title 11, U.S.C. provides:
 
 
 17
 A discharge under Section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt--... (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.
 
 
 18
 The bankruptcy courts are not unanimous in their opinion as to whether or not driving under the influence, without more, constitutes conduct sufficiently "willful and malicious" as to mandate a finding of nondischargeability. Compare In re Maney, 23 B.R. 61, 62 (Bankr.W.D.Okl.1982) ("driving while intoxicated does not as a matter of intent create a nondischargeable debt"); In re Morgan, 22 B.R. 38, 39 (Bankr.D.Neb.1982) (liability incurred as a result of drunk driving held dischargeable in the absence of evidence that the judgment-debtor intended to injure anyone); In re Naser, 7 B.R. 116, 118 (Bankr.W.D.Wis.1980) (Sec. 523(a)(6) requires an actual intent to injure someone); and In re Bryson, 3 B.R. 593, 596 (N.D.Ill.1980) (same); with In re Callaway, 41 B.R. 341, 346 (Bankr.E.D.Penn.1984) (liabilities incurred as a result of drunk driving held nondischargeable because "the voluntary drinking ... constituted an intentional act sufficient to support the conclusion that the injury caused by the defendant was willful and malicious"); In re Wooten, 30 B.R. 357, 358 (Bankr.N.D.Ala.1983) (same); In re Greenwell, 21 B.R. 419, 421 (Bankr.S.D.Ohio 1982) (same); and In re Cloutier, 33 B.R. 18, 20 (Bankr.D.Me.1983) (debt resulting from driving while intoxicated held nondischargeable because substantial certainty of injury resulting from judgment-debtor's drinking gave rise to inference of intent to injure). Likewise, the judges of the Bankruptcy Court for the Northern District of Alabama themselves are not in agreement as to whether or not driving while intoxicated invariably constitutes conduct sufficient to meet the "willful and malicious" standard. Compare In re Wooten, 30 B.R. 357, 359 (Bankr.N.D.Ala.1983) (Judge Coleman held that "the voluntary drinking by defendant constituted an intentional act sufficient to support the conclusion that the injury caused by defendant was willful and malicious"), with In re Silas, 24 B.R. 771 (Bankr.N.D.Ala.1982) (Judge Wright held that a similar debt was dischargeable).
 
 
 19
 The different holdings in In re Wooten and In re Silas may be explained by differing interpretations by the two judges of the meaning and intent of the bankruptcy laws as revealed by their legislative evolution. A quick review of that history is therefore in order.
 
 
 20
 Section 17(a)(8) of the Bankruptcy Act of 1898 excepted from discharge any debt resulting from "willful and malicious acts" causing an injury. The Supreme Court construed this "willful and malicious" language of Sec. 17(a)(8) in the leading case of Tinker v. Colwell, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904). The court there created a "reckless disregard" standard which excepted from discharge claims for injuries or property damage resulting from conscious and reckless disregard of the rights of others, even where there was no evidence of a deliberate intent to injure.
 
 
 21
 In 1978 a new Bankruptcy Code was enacted. In it Title 11, Sec. 523(a)(6), provides that there will be no discharge from debts resulting from the "willful and malicious injury by the debtor to another entity or the property of another entity". Therefore, the "willful and malicious" language of Sec. 17(a)(8) of the Bankruptcy Act of 1898 was carried forward and used in the Bankruptcy Code of 1978. However, the House Report as to Sec. 523(a)(6) stated:
 
 
 22
 Paragraph (6) excepts debts for willful and malicious injury by the debtor to another person or to the property of another person. Under this paragraph, "willful" means deliberate or intentional. To the extent that Tinker v. Colwell, supra, held that a lesser standard is intended, and to the extent that other cases have relied on Tinker to apply a "reckless disregard" standard, they are overruled.
 
 
 23
 H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 6320.
 
 The Senate Report read:
 
 24
 Paragraph (5) provides that debts for willful and malicious conversion or injury by the debtor to another entity or the property of another entity are nondischargeable. Under this paragraph "willful" means deliberate or intentional. To the extent that Tinker v. Colwell, 139 U.S. 473 [, 24 S.Ct. 505, 48 L.Ed. 754] (1902) [1904], held that a less strict standard is intended, and to the extent that other cases have relied on Tinker to apply a "reckless disregard" standard, they are overruled.
 
 
 25
 S.Rep. No. 989, 95th Cong., 1st Sess. 79 (1978), reprinted in 1978 U.S.Code Cong. & Ad.News 5865.
 
 
 26
 In In re Silas, Judge Wright examined the history of Sec. 523(a)(6) and concluded that the debt which there arose from drunken driving was dischargeable. 24 B.R. at 773. In support of this holding he cited 3 Collier on Bankruptcy p 523.16 at 523-119 (15th ed. 1982), which states that "the many cases holding various degrees of recklessness to constitute willfulness and maliciousness will no longer be controlling in construing Sec. 523(a)(6) of the Code". Conversely, Judge Coleman reviewed the same legislative history of Sec. 523(a)(6) and found that a debt resulting from drunken driving was not dischargeable. In re Wooten, 30 B.R. at 359. In quoting from In re Greenwell, 21 B.R. 419 (Dist.Ct.Ohio 1982), Judge Coleman said in examining this legislative history:
 
 
 27
 [w]hat is to be gleaned from this review is that Congress intended that it not be sufficient to classify an act as willful and malicious that it be one done for reckless disregard for consequences. An intentional act is required. It is not, however, necessary to find that personal ill will existed in order for there to be a finding of willful and malicious injury. In re Obermeyer, 12 B.R. 26 (B.J., [Bkrtcy.] Ohio, 1981). In the case before us now, we hold that the voluntary drinking by defendant constituted an intentional act sufficient to support the conclusion that the injury caused by defendant was willful and malicious. That is, while the legislature meant to circumscribe the scope of the Tinker case, its holding that "willful and malicious" under the statute is satisfied where there is an intentional injury remains valid. Defendant's intentional drinking unleashed the unbroken causative chain which led to the injury to plaintiff's vehicle. It will not avail defendant in his effort to avoid this result to argue that he did not know plaintiff prior to the accident and therefore the injury could not have been intentionally caused. One is responsible under the law for the natural outcome of his actions.
 
 
 28
 In re Wooten, 30 B.R. at 358-59.
 
 
 29
 Another possible explanation for the different conclusions reached by Judge Wright and Judge Coleman is that the facts in their two cases are not identical. This is, of course, true in every case, because no two cases are exactly alike. In Silas, the plaintiff and the debtor had both been drinking at the time of the accident. In Wooten, the plaintiff was a pregnant woman walking along the side of the road when she was struck by the car driven by the drinking debtor. Although neither court stated that these particular distinguishing facts weighed in deciding what constitutes an action which is "willful and malicious", this court mentions in passing that the peculiar and distinct facts of the two cases may have influenced the differing conclusions. Then, again, they may not.
 
 
 30
 Neither appellant nor appellee has proffered to this court in this appeal any expression from the Eleventh Circuit suggesting its interpretation of Sec. 523(a)(6) as applied to debts arising from the debtor's driving while intoxicated. The court has been equally unsuccessful in uncovering an Eleventh Circuit case on point. However, the parties have directed the court's attention to Ninth Circuit and Tenth Circuit cases. Appellant relies on In re Adams, 761 F.2d 1422 (9th Cir.1985), which holds that driving while intoxicated amounts to willful and malicious conduct and, therefore, prevents a debt arising from a tort committed while drunk from being dischargeable. On the other hand, appellee finds support in In re Compos, 768 F.2d 1155 (10th Cir.1985), which holds that this kind of conduct is not willful and malicious and, thus, that a debt arising therefrom is dischargeable. Although both courts wrote well-reasoned opinions, this court is ultimately persuaded by the logic of the Ninth Circuit.
 
 
 31
 The Ninth Circuit in In re Adams looked to the legislative history of Secs. 523(a)(6) and 523(a)(9) for aid in interpreting the statute. Section 523(a)(9), which became effective with respect to cases filed ninety days after July 10, 1984, states in pertinent part:
 
 
 32
 A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual from any debt--... (9) to any entity, to the extent that such debt arises from a judgment or consent decree entered in a court of record against the debtor wherein liability was incurred by such debtor as a result of the debtor's operation of a motor vehicle while legally intoxicated under the laws or regulations of any jurisdiction within the United States or its territories wherein such motor vehicle was operated and within which such liability was incurred....
 
 
 33
 11 U.S.C. Sec. 523(a)(9) (Supp.1985).
 
 
 34
 Although this section became effective after In re Adams (and after Fielder's bankruptcy) the Ninth Circuit looked to the amendment and the legislative history of the Act for clarification of the muddled case law surrounding the issue of dischargeability of debts incurred prior to the effective date of Sec. 523(a)(9) as a result of driving while intoxicated. In support of the proposition that subsequent legislative history can assist in interpreting an earlier statute, the Ninth Circuit cites May Department Stores Co. v. Smith, 572 F.2d 1275, 1278 (8th Cir.) (per curiam) cert. denied, 439 U.S. 837, 99 S.Ct. 122, 58 L.Ed.2d 134 (1978), where the Eighth Circuit held that the legislative history of an amendment, though not controlling, is nonetheless entitled to substantial weight in construing the earlier law. See also, Florida Citrus Exchange v. Folsom, 246 F.2d 850, 857 (5th Cir.1957) where the Fifth Circuit held: "[i]n the construction of a legislative measure, statutes in pari materia, amendatory acts, and their legislative history may be examined."
 
 
 35
 This court thinks that the In re Adams court was correct in its view that a conflict among the courts in construing statutes is "an indication that a subsequent amendment is intended to clarify, rather than change, the existing law". 761 F.2d at 1427, citing Callejas v. McMahon, 750 F.2d 729, 731 (9th Cir.1984); Brown v. Marquette Savings and Loan Association, 686 F.2d 608, 615 (7th Cir.1982); United States v. Tapert, 625 F.2d 111, 121 (6th Cir.), cert. denied, 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 and 449 U.S. 1034, 101 S.Ct. 610, 66 L.Ed.2d 496 (1980); C. Sand, Sutherland Statutory Construction Sec. 49.11 at 414-15 (N. Singer 4th ed. 1984). Based on this rationale and on these authorities the Ninth Circuit concluded that the debts incurred by the judgment-debtor while driving intoxicated are not dischargeable. In re Adams, 761 F.2d at 1427.
 
 
 36
 This court believes that Congress never intended Sec. 523(a)(6), even before Sec. 523(a)(9), to allow the dischargeability of all debts clearly resulting from drunken driving. Some drunken driving is of such a wanton and malicious variety that Congress could not have meant to permit the perpetrator to walk away from his tort liability simply by walking from an adverse decision in the tort court into the bankruptcy court. The court looks to Sec. 523(a)(9), just as the Ninth Circuit did in In re Adams, as a clarification of and not as an 180 degree turn from the law as it existed prior to the enactment of Sec. 523(a)(9). The consumption of twelve beers followed immediately by the driving of a vehicle on the public highways is, in this court's view, a malicious and wanton act and one in which the result can be predicted. Fielder's blood test here showed .208 per cent alcohol. A debt directly resulting from driving while so intoxicated is not dischargeable under Sec. 523(a)(6). This court finds that the result in the bankruptcy court was occasioned by an erroneous interpretation of the law. The bankruptcy court here discharged Fielder because his bankruptcy petition was filed, and the accident occurred, prior to the effective date of Sec. 523(a)(9). In this case the actual facts found to exist by the bankruptcy court lead this court inexorably to an opposite conclusion, namely, that the debt was and is nondischargeable under Sec. 523(a)(6).
 
 
 37
 The enactment of Sec. 523(a)(9) has rendered academic the issue presented here as to future accidents.
 
 
 38
 The court does not want to be understood to be holding that every tort obligation created prior to Sec. 523(a)(9) while the tort-feasor had any alcohol in his blood is nondischargeable. There is no such absolute rule. Rather, the holding is simply that this particular set of facts was so egregious as to add up to nondischargeability as a matter of law under Sec. 523(a)(6) and that the holding of the court below was therefore clearly erroneous.
 
 
 39
 It is unnecessary to compare the recent holding of the Second Circuit in Robinson v. McGuigan, 776 F.2d 30 (2nd Cir.1985), as to which a petition for writ of certiorari is pending before the Supreme Court. The McGuigan court holds that a judgment against a criminal defendant in favor of a "victim" under Connecticut's statutory version of victim restitution, similar to the federal Victim and Witness Protection Act, is dischargeable in bankruptcy. Whether or not this Second Circuit decision will stand, or is here apposite, will await another day.
 
 
 40
 The decision of the bankruptcy court is due to be reversed and the case rendered. An appropriate order will be entered.