In re Donald M. MARTIN, Debtor.

ALFA MUTUAL FIRE INSURANCE COMPANY, Appellant,

v.

Von G. MEMORY, Trustee, Appellee.

Civ. A. No. 93–A–1358–N.

United States District Court, M.D. Alabama, Northern Division.

Aug. 2, 1995.

Kenneth D. Wallis, II, Alfa Ins. Companies, Montgomery, AL, John Patrick Darby, John P. Whittington, Bradley, Arant, Rose & White, Birmingham, AL, Stuart M. Maples, Bradley, Arant, Rose & White, Huntsville, AL, for appellant.

Von George Memory, Trustee, Von G. Memory, P.A., Montgomery, AL, Floyd R. Gilliland, Jr., Nix, Holtsford & Vercelli, P.C., Montgomery, AL, for appellee.

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

ALBRITTON, District Judge.

This cause is before the court on appeal from the final judgment entered by the United States Bankruptcy Court for the Middle District of Alabama, in favor of the appellee, Von G. Memory, trustee of the bankruptcy estate of Donald M. Martin ("Martin"), on October 1, 1993. The court has jurisdiction pursuant to 28 U.S.C. § 158.[1]

After independently reviewing the record, the briefs, and the documents submitted by the parties, this court finds that the decision of the bankruptcy court is due to be affirmed.

### II. STATEMENT OF THE CASE
### A. FACTS

On March 9, 1988, C & C Land Corporation ("C & C"), entered into an agreement to purchase from Alfa Mutual Fire Insurance Company ("Alfa"), fifty residential building

1. Jurisdiction lies pursuant to 28 U.S.C. § 158, which provides that the district courts of the United States "shall have jurisdiction to hear appeals from final judgments, orders, and decrees ... of bankruptcy judges." 28 U.S.C. § 158.

lots located in the Dannelly Pines Subdivision in Montgomery, Alabama, for $267,500. Martin, the owner of all C & C stock, signed the contract individually and in the name of C & C as Chairman. The agreement showed C & C to be the purchaser.

On April 6, 1988, C & C made a payment of $25,000 toward the purchase price of the lots and executed a promissory note to Alfa for the balance of $242,500. The promissory note was due and payable in full on July 6, 1989, fifteen months from the date of execution. To secure the debt on the promissory note, C & C executed a mortgage on the real property to Alfa. Martin signed the mortgage and the promissory note in the name of C & C by him as Chairman of the Board, and individually as guarantor.

C & C marketed and sold lots in the Dannelly Pines Subdivision. As specified in the note, C & C remitted $6,000 to Alfa for each lot sold. Upon receipt of the funds for a lot, Alfa released that lot to C & C and reduced C & C's indebtedness on the promissory note. In return for payments from Martin and C & C, Alfa released a total of fifteen lots.

C & C failed to pay the note in full when it matured on July 6, 1989. Between July 6, 1989, and November 3, 1989, Alfa extended the deadline for payment of the note in response to requests by Martin. (Tr. at 115; 122–3).[2]

On August 3, 1989, Martin, as President of the Martin Realty and Construction Company ("Martin Realty"), signed an agreement with Alfa which provided that in consideration of a $25,000 payment of principal, plus accrued interest, Alfa would extend the final payoff date of the note and mortgage until August 31, 1989. In consideration of the extension agreement, Alfa received a check drawn from Martin Realty's bank account with Union Bank and Trust for $26,100. Alfa applied the check to reduce the amount due under the promissory note, but did not release any lots from the mortgage in return for the payment.

On October 9, 1989, after Martin requested another extension, conditioned on the pay-

ment of $25,000 principal, plus accrued interest, Alfa received a check from Martin Realty in the amount of $26,025.36. The check was returned for insufficient funds. Subsequently, Alfa and Martin agreed that Alfa would release the remaining lots from the mortgage only upon full payment of the balance due under the note.

In early November, Alfa presented Martin with a letter requesting full payment on the note. On November 3, 1989, Martin Realty sent a check to Alfa in the amount of $105,062.49, which represented payment in full of the balance due under the note. After the check was honored by the bank, Alfa executed and delivered a Corporate Cancellation and Release of the mortgage to C & C, releasing the thirty-five lots remaining under the mortgage.

### B. PROCEDURAL HISTORY

On January 5, 1990, Donald M. Martin ("Martin") filed a petition in bankruptcy under Chapter 11. The case converted to Chapter 7 on December 10, 1990. On December 11, 1990, Von G. Memory was appointed as trustee.

On April 11, 1990, C & C was filed as an involuntary Chapter 7 petition. On May 31, 1990, the petition was converted to Chapter 11, and thereafter converted back to a Chapter 7 bankruptcy on December 11, 1990. Von G. Memory was appointed as trustee.

On December 10, 1992, the trustee on behalf of Martin's estate filed a complaint to recover the $105,062.49 payment made to Alfa within ninety days of filing bankruptcy, alleging that the payment was an avoidable preferential transfer under 11 U.S.C. § 547. The trustee later amended the complaint to allege that the transfer was fraudulent under 11 U.S.C. § 548.

Alfa filed its answer on January 22, 1993. The bankruptcy court allowed Alfa to amend the answer twice. Alfa contended that the payment was not an avoidable preference under 11 U.S.C. § 547(b). Alfa also contended that C & C and Martin were alter egos, and that new value was given to Martin

---

**2.** "Tr." refers to the transcript from the bankruptcy court's hearing held on June 18, 1993.

through C & C at the time the alleged preferential transfer occurred, asserting affirmative defenses under 11 U.S.C. § 547(c)(1) and (c)(4). Additionally, Alfa claimed that the amendment to the complaint adding a claim for fraudulent transfers was untimely. Alfa contended that even if the claim were timely filed, the trustee could not prevail on its claim for fraudulent transfer because Alfa had given value to Martin under § 548(d)(2).

On June 18, 1993, the bankruptcy court conducted a hearing on these issues. The bankruptcy court granted Alfa's motion to amend its answer, but denied its motion to dismiss the amended complaint.

On October 1, 1993, the bankruptcy court held that Alfa obtained a voidable preference under 11 U.S.C. § 547(b) when it received $105,062.49 on November 3, 1989. The bankruptcy court further held that Alfa was not entitled to the exceptions to voidable preference under 11 U.S.C. § 547(c)(1) and (4) and that the trustee was able to recover the $105,062.49, plus interest, from Alfa. However, the bankruptcy court held that the transfer was not fraudulent under § 548.

On October 12, 1993, Alfa timely filed its notice of appeal.

### III. ISSUES ON APPEAL

1. Did the bankruptcy court err in holding that the transfer at issue constituted an avoidable preference under 11 U.S.C. § 547(b).

   a. Did the bankruptcy court err in holding that the $105,062.49 payment constituted a transfer of an interest in property of the debtor, Martin.

   b. Did the bankruptcy court err in holding that the transfer at issue was for or on account of an antecedent debt owed by Martin.

   c. Did the bankruptcy court err in finding that the $105,062.49 payment enabled Alfa to receive more than it

would have received had the transfer not been made and Alfa had received payment to the extent provided under the Bankruptcy Code.

   d. Did the bankruptcy court err in concluding that C & C was not the alter-ego of Martin.

2. Did the bankruptcy court err in finding that Alfa had not satisfied the elements of the affirmative defense of "contemporaneous exchange for new value" set forth in 11 U.S.C. § 547(c)(1).

3. Did the bankruptcy court err in holding that Alfa had not established the elements of the "transfer for subsequent new value" defense set forth in 11 U.S.C. § 547(c)(4).

### IV. STANDARD OF REVIEW

A district court reviews the bankruptcy court's factual findings under the limited and deferential clearly erroneous standard. *In re Club Associates,* 951 F.2d 1223, 1228 (11th Cir.1992); *see also* Fed.R.Bankr.P. 8013[3]; *In re Fielder,* 799 F.2d 656, 657 (11th Cir. 1986); *In re Sublett,* 895 F.2d 1381, 1383 (11th Cir.1990); *In re Goerg,* 930 F.2d 1563, 1566 (11th Cir.1991); *In re Thomas,* 883 F.2d 991, 994 (11th Cir.1989), *cert. denied,* 497 U.S. 1007, 110 S.Ct. 3245, 111 L.Ed.2d 756 (1990) (the standard of review utilized by the court of appeals is the same as that utilized by the district court—factual findings of the bankruptcy court cannot be set aside unless they are clearly erroneous). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (citation and internal quotation marks omitted).

In contrast, a reviewing district court is not bound by the bankruptcy court's conclusions of law. *In re Fielder,* 799 F.2d at 657.

---

**3.** Fed.R.Bankr.P. 8013 provides as follows:
On appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

A district court may examine the applicable principles of law to determine whether they were properly applied and whether they support the findings of the bankruptcy court. *Id.*; *see also In re Empire for Him, Inc.,* 1 F.3d 1156, 1159 (11th Cir.1993).

## V. DISCUSSION

### A. AVOIDABLE PREFERENCE UNDER 11 U.S.C. § 547(B)

■ Preference law under the Bankruptcy Code is aimed at insuring that all creditors receive an equal distribution from the available assets of the debtor. H.R.Rep. No. 595, 95th Cong., 1st Sess. 177–78, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6138; *see also* 4 Collier on Bankruptcy ¶ 547.05, at 547–39 (1995). Section 547(b) of the Bankruptcy Code, which pertains to avoidable preferences, provides as follows:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> (A) on or within 90 days before the date of the filing of the petition; or
>
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of this title;
>
> (B) the transfer had not been made; and
>
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The trustee, as plaintiff, has the burden of proving that the transfer was an avoidable preference under 11 U.S.C. § 547(b). *See* 11 U.S.C. § 547(g); *see also In re R & T Roofing Structures & Commer-*

*cial Framing, Inc.,* 887 F.2d 981, 989 (9th Cir.1989).

Alfa contends that the bankruptcy court erred when it held that Martin's November 3, 1989, payment of $105,062.49 to Alfa constituted an avoidable preference under 11 U.S.C. § 547(b). First, Alfa argues that the November 3, 1989, check was not a transfer of an interest in the debtor's property, under § 547(b)(1). Second, Alfa claims that the November 3, 1989, payment was not for an antecedent debt owed by Martin before the transfer was made, as required by § 547(b)(2). Third, Alfa asserts that Alfa did not receive more money from the transfer at issue than it would have received from a distribution in the Chapter 7 case, under § 547(b)(5). Alfa's arguments are meritless.

### 1. TRANSFER OF AN INTEREST IN PROPERTY OF THE DEBTOR

■ Alfa first argues that the bankruptcy court erred when it held that a transfer of Martin's interest in property occurred when the November 3, 1989, check for $105,062.49 was delivered and honored. Alfa contends that the order is "defective on its face" because the bankruptcy court did not make any finding of fact that the transfer by Martin Realty constituted a transfer of Martin's property. Alfa further asserts that the bankruptcy court lacked sufficient evidence to make such a finding.

Alfa's argument hinges on whether Martin owned the property of Martin Realty. *See* 4 Collier on Bankruptcy ¶ 547.03, at 547–24 (1995) (in order for a transfer to be preferential, the interest in property transferred must belong to the debtor). After reviewing the record, the court finds that the bankruptcy court did hold that the $105,062.49 check, which was drawn on Martin Realty's account, constituted a transfer of an interest in property of Martin pursuant to 11 U.S.C. § 547(b). Moreover, the court finds that the bankruptcy court had sufficient evidence upon which to base its conclusion.

The fact that the transfer from Martin Realty to Alfa was a transfer of Martin's interest in property is established by three sources: the petition for bankruptcy, the trustee's testimony, and the testimony of

Richard Piel, Martin's lawyer. Martin's bankruptcy petition indicates that Martin was doing business under the name Martin Realty & Construction Company. (Pl.'s Ex. 22; Tr. at 73, 84). Additionally, although Alfa contends that the opinions of both Piel and the trustee do not provide sufficient evidence upon which the bankruptcy court could find that the transfer at issue involved Martin's property, Alfa has conceded that Piel and the trustee have testified that Martin conducted business through Martin Realty and that Martin Realty was the trade name for Martin.[4]

Reviewing for clear error the bankruptcy court's factual finding that the transfer of Martin Realty's property constitutes a transfer of Martin's interest, the court finds none. See In re Club Associates, 951 F.2d 1223, 1228 (11th Cir.1992); see also Fed. R.Bankr.P. 8013. Moreover, the court finds that the bankruptcy court had sufficient evidence upon which to base its decision. Therefore, the bankruptcy court's finding that the check constituted a transfer of an interest in the debtor's property under § 547(b)(1) is due to be affirmed.

**2. ANTECEDENT DEBT**

■ Alfa next contends that the bankruptcy court erred when it concluded that the payment on November 3, 1989, was made for or on account of an antecedent debt incurred by Martin on April 6, 1988.

■ Section 547(b)(2) provides that the trustee may avoid any transfer of an interest of the debtor in property for or on account of an antecedent debt owed by the debtor before such transfer was made. 4 Collier on Bankruptcy ¶ 547.05, at 547–39 (1995). The

term "debt" is to be construed broadly and expansively for the purposes of the Bankruptcy Code. In re Chase & Sanborn Corp., 904 F.2d 588, 595 (11th Cir.1990); In re United Energy Corp., 944 F.2d 589, 595 (9th Cir.1991). A debt is incurred when the debtor becomes legally bound to pay. In re Gold Coast Seed Co., 751 F.2d 1118, 1119 (9th Cir.1985); In re White River Corp., 799 F.2d 631, 632 (10th Cir.1986).

■ To determine whether a loan repayment is "for or on account of" a debt owed by the debtor, the court must consider whether the creditor would be able to assert a claim against the estate, absent the payment. See In re Chase & Sanborn Corp., 904 F.2d at 595 (one incurs a debt "when a creditor has a claim against a debtor—even if the claim is unliquidated, unfixed, or contingent."); see also In re Virginia–Carolina Financial Corp., 954 F.2d 193, 197 (4th Cir.1992); 11 U.S.C. § 101(12). A claim is defined under the Bankruptcy Code as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).

Alfa could have asserted a claim against Martin for repayment of the loan upon C & C's default because Martin incurred a contingent obligation to pay the debt when he signed the promissory note and mortgage as guarantor on April 6, 1988. Therefore, the court finds that Martin Realty's payment to Alfa was for or on account of an antecedent debt. See In re Chase & Sanborn Corp., 904 F.2d at 595[5]; see also In re Virginia–Carolina Financial Corp., 954 F.2d at 197. Because the date on which Martin incurred this

---

4. Martin's counsel, Richard Piel testified as follows:

Q. Okay. In what capacity were you acting when you sent these letters and accompanied checks to Alfa?

A. General counsel.

Q. For?

A. Really general counsel for Don Martin. Martin Realty & Construction Company never owned any assets or never had anything. It was just a trade name he operated under. (Tr. at 84). The trustee testified that "Martin Realty & Construction Company was the d/b/a of Don Martin." (Tr. 42–43).

5. In Chase & Sanborn, the court stated that the guarantor's payments on a loan were "obviously made in anticipatory satisfaction of its contingent obligation to ABC [the creditor] under the guarantee agreement; that the payments were clearly intended to help prevent Duque [the debtor] from defaulting and therefore forestall "maturation" of the guarantee obligation does not render them any less "for or on account of" that debt." Id. at 595.

contingent liability precedes the date of the $105,062.49 transfer, the bankruptcy court did not err in its conclusion that the transfer of the check was made for or on account of an antecedent debt under § 547(b)(2).

### 3. ALFA RECEIVED MORE THAN IT WOULD HAVE RECEIVED IN A DISTRIBUTION UNDER CHAPTER 7

█ Alfa contends that the bankruptcy court erred in concluding that Alfa received more than it would have received in a distribution under Chapter 7.

Section 547(b)(5) of the Bankruptcy Code provides that the trustee can avoid a transfer only if the transfer enabled the creditor to receive more than it would have received if the transfer had not been made and the creditor had received payment under the provisions of Chapter 7. 11 U.S.C. § 547(b)(5). Alfa asserts that at the time the check was transferred, Alfa was fully secured by a mortgage on thirty-five lots in the Dannelly Pine subdivision in Montgomery, and if Alfa had not received the check, Alfa would have been able to foreclose on its mortgage interest, sell the underlying collateral, and satisfy the debt in full. However, the trustee argues that the contingent antecedent debt created by Martin's personal guarantee was not secured, and that the question before the court is whether Alfa received more than it would have as a general unsecured creditor in Martin's Chapter 7 liquidation. Alfa responds that Martin's debt *was* secured because C & C was the alter ego of Martin and, therefore, the mortgage from C & C constituted security from Martin. The bankruptcy court rejected the alter ego theory.[6]

Alfa argues that the bankruptcy court erred when it concluded that C & C, a corporation wholly owned by Martin, was not the alter ego of Martin. Alfa contends that under the alter ego theory, the debt against Martin is secured because the loan to C & C, Martin's "alter ego," was secured. Alfa asserts that since Martin and C & C should be

treated as one and the same, and because its claim was secured and it could have taken the security if the debt had not been paid, the trustee has failed to show that it received more from the transfer than it would in a Chapter 7 liquidation.

█ As a general rule, while a shareholder will not be held liable for the debts of a corporation, upon a showing that a corporation acts as the alter ego of an individual a court may, under some circumstances, pierce the corporate veil. A court will not pierce the corporate veil, however, simply because the corporation is under capitalized, or because the corporation is owned by a sole shareholder. *Simmons v. Clark Equipment Credit Corp.*, 554 So.2d 398, 400–01 (Ala. 1989). The party seeking to pierce the corporate veil must further demonstrate the misuse of control and loss resulting from it, as by showing fraud in asserting the corporate existence or that recognition of the corporate existence will result in injustice or inequitable consequences. *Id.*

In *Simmons*, the Alabama Supreme Court set forth the conditions under which the court may pierce the corporate veil. The Court stated as follows:

> The corporate veil may be pierced where a corporation is set up as a subterfuge, where shareholders do not observe the corporate form, where the legal requirements of corporate law are not complied with, where the corporation maintains no corporate records, where the corporation maintains no corporate bank account, where the corporation has no employees, where corporate and personal funds are intermingled and corporate funds are used for personal purposes, or where an individual drains funds from the corporation.

*Id.* at 401.

In the instant case, the bankruptcy court found that there was no evidence that C & C was set up as a subterfuge or that the legal requirements of corporate law were not complied with or that the corporation maintained

---

**6.** The bankruptcy court held that Alfa received more from the transfer than it would have if Alfa had received payment of the debt under Chapter 7 distribution. The bankruptcy court noted that the trustee's uncontradicted testimony established that Alfa would not have received more than ten cents on the dollar under the Chapter 7 distribution. (Tr. at 23–25).

no corporate records, no employees, or that personal funds were commingled. Alfa recognized that C & C was a separate entity when it required the separate individual guaranty of Martin. The bankruptcy court acknowledged that the business functions of Martin and C & C were sometimes blurred and that C & C did not strictly adhere to corporate formalities. However, the bankruptcy court concluded that there was insufficient evidence to invoke the alter ego defense to the trustee's claim of preferential transfers.

Alfa argues that the evidence shows that C & C was the instrumentality of Martin. Alfa proffers the following as evidence that C & C acted as Martin's alter ego: (1) Piel, Martin's attorney, testified that C & C was simply a name under which Martin did business and that Martin made no distinction between the affairs of C & C and his own business affairs. (Tr. at 73–4); (2) Piel was unable to distinguish between the corporate affairs of C & C and those of Martin. (Tr. at 77); (3) Martin owned 100% of the stock and had complete control over finances, policies, and business decisions (Tr. at 74); (4) Directors of C & C did not hold annual meetings or confer with Martin concerning the operation of C & C's affairs (Tr. at 98); (5) Martin dominated the board of directors. (Tr. at 101); (6) C & C did not maintain a separate office, address or phone number (Tr. at 55); (7) Martin and Piel sent correspondence concerning C & C business affairs on the Martin Realty letterhead; and (8) Martin Realty paid checks on behalf of C & C (Tr. at 84, 115, 193).

Although the line separating the business affairs of C & C and those of Martin is not clearly drawn, the court finds that the record supports the bankruptcy court's holding that C & C was not Martin's alter ego. Since its incorporation in 1962, C & C has maintained a corporate charter,[7] has held meetings,[8] has passed corporate resolutions, and has had different officers. (Tr. at 101–104). Additionally, C & C and Martin have filed separate tax returns, and have maintained different identification numbers. (Tr. at 70). C & C and Martin have also filed separate bankruptcy petitions. (Tr. at 69, 70).

A failure to follow minor corporate formalities is not sufficient to invoke the lowering of the protective corporate shell. *See Co–Ex Plastics Inc. v. AlaPak, Inc.,* 536 So.2d 37, 39 (Ala.1988). Additionally, a court will not pierce the corporate veil simply because the corporation is owned by a sole shareholder. *See Simmons,* 554 So.2d at 400–01.

Reviewing the bankruptcy court's findings of fact under the clearly erroneous standard, the court finds that the bankruptcy court did not err in concluding that C & C was not the alter ego of Martin. *Id.* at 400 (A finding that an individual is the alter ego of a corporation is "usually a question for the trier of fact").

Since C & C was not the alter ego of Martin, the bankruptcy court correctly rejected Alfa's argument that it could have foreclosed its mortgage and been made whole without a problem of preference. As the bankruptcy court noted,

> If Alfa had foreclosed on its security interest against C & C Land as it insists it had a right to do as mortgagee, there would have been no payment of $105,062.49 from the assets of this debtor, and no preference. That is not what happened here.

*See* Bankr.Op. Therefore, the conclusion of the bankruptcy court that the trustee satisfied the requirements of § 547(b)(5) is due to be affirmed.

### B. CONTEMPORANEOUS EXCHANGE FOR NEW VALUE

Alfa asserts that the bankruptcy court erred in holding that Alfa had not satisfied the elements of the affirmative defense of "contemporaneous exchange for new value" set forth in 11 U.S.C. § 547(c)(1).

The purpose of the "new value" defense is to protect transactions that do not diminish the bankruptcy estate. *In re Cocolat, Inc.,* 176 B.R. 540, 548 (Bankr.N.D.Cal. 1995). A transfer which would otherwise be considered as a preference will not be treat-

---

7. Tr. at 91.

8. Tr. at 91.

ed as such under 547(c)(1),[9] if: (1) the creditor extended new value to the debtor; (2) the creditor and the debtor intended "the new value and reciprocal transfer by the debtor to be contemporaneous; and (3) the exchange was in fact contemporaneous." 4 Collier on Bankruptcy ¶ 547.09, at 547–49 (1995). Alfa has the burden of proving that it is entitled to the affirmative defense under § 547(c)(1). *See* 11 U.S.C. § 547(g).

Section 547(a)(2) defines new value as follows:

> (2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation;

11 U.S.C. § 547(a)(2).

In *In re Chase & Sanborn Corp.*, 904 F.2d 588 (11th Cir.1990), the Eleventh Circuit considered a situation similar to the instant case which involved the contemporaneous exchange for new value defense. In *Chase & Sanborn*, Arab Banking Corporation ("ABC") loaned Duque, the President of Chase & Sanborn Corporation ("Chase & Sanborn"), $22 million. Chase & Sanborn guaranteed the loan and made payments to ABC. Chase & Sanborn filed a petition for bankruptcy under Chapter 11. The trustee for the bankruptcy estate of Chase & Sanborn brought an action to recover transfers by Chase & Sanborn to the creditor ABC, alleging that they were avoidable preferences, and that ABC could not rely upon the contemporaneous exchange for new value defense under § 547(c)(1). The Eleventh Circuit reversed

the bankruptcy court and the district court, and held that the defense of contemporaneous exchange for new value defense was not available to ABC. The court stated that by making payments, the guarantor, Chase & Sanborn, "gained nothing more than the release of a contingent obligation-an antecedent debt-owed to an unsecured creditor." The Eleventh Circuit held that a release from a contingent obligation, such as a guarantee on a debt, cannot constitute new value for purposes of § 547. *Id.* at 596–97.[10] In finding that Chase & Sanborn's loan payments were voidable preferences which were not excepted under § 547(c)(1), the Eleventh Circuit stated as follows:

> Any rights existing under the guarantee agreement were part and parcel of that agreement from the outset. They came into existence as contingent rights at the same time as did the contingent obligation represented by the guarantee itself; thus, they simply defined the nature and extent of that obligation. Treating the maturation of such contingent rights as "new value" would disserve the policies underlying section 547, because a debtor's preferential payment of actual monetary value to a creditor under a guarantee agreement, in return for nothing more than the pre-existing right to assert a claim for reimbursement against the party whose debt was guaranteed, depletes the tangible assets of the estate to the detriment of the other creditors.

(citations omitted).

In the current case, the court finds that the bankruptcy court's finding that Martin did not receive new value for the transfer was not clearly erroneous, and that the conclusion that a defense under § 547(c)(1) was not available to Alfa is fully supported. *See Chase & Sanborn*, 904 F.2d at 596–97; *see*

---

**9.** Section 547(c)(1) of the bankruptcy code provides as follows:

> (c) The trustee may not avoid under this section a transfer—
> (1) to the extent that such transfer was—
> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
> (B) in fact a substantially contemporaneous exchange;

11 U.S.C. § 547(c)(1).

**10.** Following the reasoning of a Fifth Circuit decision, the Eleventh Circuit stated "the released right of indemnity provided nothing of tangible value to the debtor's estate. Therefore the estate was depleted by the debtor's payment to the detriment of the unsecured creditors." *Id.* at 596 (quoting *Matter of Fuel Oil Supply & Terminaling, Inc.*, 837 F.2d 224, 230 (5th Cir. 1988)).

*also In re Cocolat, Inc.,* 176 B.R. at 548 ("Courts have consistently rejected preference defendant's contentions that the release of their unsecured claims to the extent of the payments received constituted new value under 11 U.S.C. § 547(a)(2)"). Therefore, the bankruptcy court's holding on this issue is due to be affirmed.

## C. TRANSFER FOR SUBSEQUENT NEW VALUE

■ Alfa also argues that the bankruptcy court erred when it held that Alfa could not rely on the affirmative defense of new value provided in § 547(c)(4), because Martin's loan payment in receipt for release of his contingent obligation did not constitute new value.

Section 547(c)(4) provides as follows:

(c) the trustee may not avoid under this section a transfer—

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

11 U.S.C. § 547(c)(4).

■ The purpose of the new value defense is to encourage creditors to deal with troubled businesses in the hope of rehabilitation. 11 U.S.C. § 547(c)(4); *Matter of Kroh Bros. Dev. Co.,* 930 F.2d 648 (8th Cir.1991) (citations omitted). "This exception removes the unfairness of allowing the trustee to void all transfers made by the debtor to a creditor during the preference period without giving the creditor any corresponding credits for subsequent advances of new value to the debtor's estate." 4 Collier on Bankruptcy ¶ 547.12, at 547–63 (1995). The exceptions of § 547(c)(1)–(3) are normally applied to individual transfers by the debtor, however, the "subsequent advance exception of § 547(c)(4) is Congress' solution for the running account creditor." *Id.* at 547–64.

■ The relevant inquiry under 547(c)(4) is whether the new value replenishes the estate. *See In re Jet Florida Sys., Inc.,* 841 F.2d 1082, 1084 (11th Cir.1988); *Matter of Kroh Bros. Dev. Co.,* 930 F.2d 648 (8th Cir. 1991). Generally courts have held that in order to rely upon § 547(c)(4), the creditor must: (1) have received a transfer that is otherwise avoidable as a preference under § 547(b); (2) have advanced new value to the debtor on an unsecured basis; and (3) the new value must remain unpaid as of the filing date of the bankruptcy petition. *See In re Jet Florida Sys., Inc.,* 841 F.2d at 1083; *see also Matter of Kroh Bros. Dev. Co.,* 930 F.2d at 648.

As discussed in the section of this opinion pertaining to the "contemporaneous exchange for new value" exception to avoidable preferences contained in 547(c)(1), the release of a contingent obligation does not constitute new value for purposes of § 547. *In re Chase & Sanborn Corp.,* 904 F.2d 588 (11th Cir.1990); *see also In re Cocolat, Inc.,* 176 B.R. at 548; 11 U.S.C. § 547(a)(2). Accordingly, the transfer in question is not excepted from avoidance as a preferences under § 547(c)(4), because Alfa has failed to show that the release of the obligation of the debtor constitutes new value. Therefore, the bankruptcy court did not commit error when it found that the § 547(c)(4) defense was not available to Alfa.

## VI. CONCLUSION

For the foregoing reasons, it is ORDERED that the judgment of the bankruptcy court entered on October 1, 1993, is due to be and is hereby AFFIRMED.