In re Andrew Peter McELROY, Debtor.

Aaron R. Cohen, as Trustee for the
Estate of Andrew Peter
McElroy, Plaintiff,

v.

Ronald McElroy and Sandra
McElroy, Defendants.

Bankruptcy No. 98–03390–3F7.
Adversary No. 98–127.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Jan. 4, 1999.

Nina M. LaFleur, Jacksonville, FL, for plaintiff.

Barry N. Brumer, New Smyrna Beach, FL, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This adversary proceeding came before the Court on the Complaint to Recover Preferential Transfer filed by plaintiff, Aaron R. Cohen, Trustee on June 17, 1998. (Doc. 1.) Ronald and Sandra McElroy ("McElroys") filed their Answer to Complaint to Recover Preferential Transfer on July 23, 1998. (Doc. 7.) A trial was held on November 3, 1998. After the parties concluded their presentations of evidence at this trial, the Court asked the parties to submit a memorandum of law, proposed findings of fact and conclusions of law, and a proposed final judgment to the Court on December 3, 1998.[1] Upon review of these submissions and the evidence presented, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Andrew Peter McElroy ("Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on April 28, 1998. Debtor listed total assets of $1,475.00, all claimed as exempt, and $48,711.02 of total liabilities in the schedules he filed with this Court. In 1996, prior to filing his petition, Debtor resided in the state of Maine where he had an accident in a Burger King restaurant and suffered various personal injuries. Debtor lost his job in April of 1996 due to injuries suffered from this accident. Debtor then moved to Florida to reside with his parents, Ronald and Sandra McElroy, defendants in

this proceeding. During this period, McElroys loaned Debtor money for living expenses, moving expenses and vehicle payments. Debtor promised to repay these loans. On April 11, 1989, Debtor signed a paper stating that "I promise to pay $50.00 a month to Ronald & Sandra McElroy for money they loaned me for my Chevy truck. Total owed $3800.00." On September 26, 1993, Debtor signed a paper stating that "I promise to pay $1400.00 for the VW Golf my parents purchased for me." McElroys admit that "[I]t was agreed these advances would be repaid. All the above payments were made under an agreement between the parties, well prior to the bankruptcy of the debtor, wherein debtor would repay a portion of the debts so paid for him when he received an insurance settlement and/or returned to work." (Doc. 7.)

On or about October 28, 1997, Debtor settled his personal injury claim with Burger King. Debtor received $15,000.00 from this settlement and in exchange gave Burger King a release of claims. Debtor subsequently transferred $10,000.00 to his parents for repayment of the loans. McElroys admit that Debtor received $15,000.00 and that in November of 1997, they received $10,000.00 from Debtor as payment for loans previously made. Debtor still owes his parents $4,800.00, although Debtor did not list such debt in his bankruptcy filings.

Aaron R. Cohen ("Trustee") commenced this proceeding to recover as a preferential transfer the $10,000.00 paid to McElroys by Debtor within one year of Debtor's bankruptcy filing. McElroys filed an answer in which they denied Trustee's allegations but failed to raise any of the affirmative defenses provided in 11 U.S.C. § 547(c). However, at the trial on November 3, 1998, McElroys attempted to characterize Debtor's repayment of the loan as being in the "ordinary course of business". Testimony did show that Debtor regularly paid his parents $50.00 to $60.00 per month on account of these loans. However, Sandra McElroy testified that the re-

---

1. Barry N. Brumer, attorney for the defendants, did not submit a proposed final judgment or proposed findings of fact and conclusions of law.

ceipt of a lump sum payment of $10,000.00 was not ordinary.

Trustee seeks to recover this $10,000 transfer. For the reasons stated below, the Court finds this transfer to be preferential pursuant to 11 U.S.C. § 547(b) and thus Trustee is entitled to its recovery.

### CONCLUSIONS OF LAW

In *Begier v. Internal Revenue Service*, 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990), the Supreme Court stated that:

> Equality of distribution among creditors is a central policy of the Bankruptcy Code. According to that policy, creditors of equal priority should receive pro rata shares of the debtor's property. Section 547(b) furthers this policy by permitting a trustee in bankruptcy to avoid certain preferential payments made before the debtor files for bankruptcy. This mechanism prevents the debtor from favoring one creditor over others by transferring property shortly before filing for bankruptcy. Of course, if the debtor transfers property that would not have been available for distribution to his creditors in a bankruptcy proceeding, the policy behind the avoidance power is not implicated.

496 U.S. at 58–59, 110 S.Ct. 2258 (footnote omitted). Section 547(b) of the Bankruptcy Code provides in relevant part:

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made ...
>
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than it would receive if—(A) the case were a case under Chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received

payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The underlying purpose of preference law is the desire to insure an equal distribution of available assets to all creditors. *In re Martin*, 184 B.R. 985, 990 (M.D.Ala.1995). In a preference case, the plaintiff has the burden of proving that the pre-petition transfer is avoidable because it constitutes a preferential transfer under Section 547(b) of the Bankruptcy Code. *Id.* at 990. The burden of proof then shifts to the defendant, against whom recovery or avoidance is sought, to prove that it is entitled to one of the affirmative defenses to preferential transfers as set forth in section 547(c). 11 U.S.C. § 547(g); *In re Martin*, 184 B.R. at 994; *In re Mastercraft Graphics, Inc.*, 157 B.R. 914, 918 (Bankr.S.D.Fla.1993).

The transfer in question is clearly a preference. McElroys are clearly "insiders" under 11 U.S.C. § 101(31), being Debtor's parents, as well as being creditors of Debtor. The evidence shows that McElroys are creditors, having loaned Debtor almost $15,000 prior to the transfer in question. This means McElroys would be able to assert a claim against Debtor's estate. *See In re Chase & Sanborn Corp.*, 904 F.2d 588, 595 (11th Cir. 1990). McElroys admit, through their answer and the testimony of Sandra McElroy, that they were pre-petition creditors of Debtor, having an unsecured claim of more than $14,800, and concede that the transfer made to them was for or on account of an antecedent debt. Trustee testified that at the § 341 meeting of creditors, he examined Debtor under oath regarding Debtor's assets and liabilities. Debtor disclosed that prior to the filing of this case, he settled his personal injury claim against Burger King and personally received $15,000 on or about October 28, 1997. When asked what became of those funds, Debtor disclosed that in November of 1997 he transferred $10,000 to his parents to repay loans they had made to him.

Trustee is entitled to avoid any transfer to an insider creditor occurring within one year of the bankruptcy filing. Debtor filed his Chapter 7 petition on April 28, 1998. Prior to filing, Debtor received a $15,000.00 settlement on or about October 28, 1997. McEl-

roys admit receiving $10,000.00 from Debtor in November of 1997. This transfer, being within one year prior to Debtor's filing, is subject to avoidance pursuant to 11 U.S.C. § 547(b).

■ The Court now addresses whether Debtor was insolvent at the time the transfer took place. Section 101(32) of the Bankruptcy Code defines insolvency as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors." This definition of insolvency provides the Court with a "balance sheet" test to determine insolvency. Under the "balance sheet" test a debtor is said to be insolvent when its liabilities exceed its assets or, in other words, when its debts are greater than its assets. *French v. Nardolillo (In re Perry)*, 158 B.R. 694, 697 (Bankr.N.D.Ohio 1993).

■ When applying the "balance sheet" test to this case, it is clear that at the time the preferential transfer took place, Debtor was insolvent. According to Section 547(b)(3), the transfer must be made while the Debtor was insolvent. A debtor is presumed to be insolvent on and during the ninety (90) days preceding the date of filing a Bankruptcy Petition according to 11 U.S.C. § 547(f). However, this presumption does not apply in cases such as this where a transfer of funds to an insider took place more than ninety (90) days prior to filing. Thus, Trustee has the burden of proving Debtor's insolvency. 158 B.R. at 697.

Examining the schedules filed with this Court, it is evident that Debtor's liabilities exceeded his assets. Debtor listed total assets of $1,475.00 and total liabilities of $48,711.02. Review of Debtor's Schedule F—Creditors Holding Unsecured Nonpriority Claims reveals that there was debt owed in excess of assets held by Debtor prior to November of 1997, the date of the transfer. Debtor incurred substantial medical bills and over ten thousand dollars of student loans

prior to November of 1997. Additionally, Debtor had credit card debt and automobile loans. As such, the Court finds that Debtor was insolvent at the time the transfer was made.

The final element which must be present in order to establish an avoidable preferential transfer requires that the transfer enable McElroys to receive more than they would receive if "(a) the case were a case under chapter 7 of this title; (b) the transfer had not been made; and (c) such creditor received payment of such debt to the extent provided by the provisions of this title." 11 U.S.C. § 547(b)(5). Examining the entire record in this case, it is clear that the transfer that took place improved McElroys' position. McElroys benefited by receipt of a $10,000.00 payment. Without the recovery of this $10,000.00 transfer, Debtor's case will be a no-asset case.

The transfer certainly enabled McElroys to receive far more than all other creditors. By adding McElroys' claim of $15,000.00, which is apparently unsecured, to that of other creditors, Debtor would have $63,711.02 in total liabilities, all of which is unsecured. If the $10,000.00 transfer is brought back into the estate, creditors could receive over ten percent (10%) of the debt owed to them.[2] However, without this transfer being brought back into the estate, McElroys receive two-thirds of what they claim they are owed and other creditors receive nothing. Thus, the final element for avoidance of a preferential transfer is established. Therefore, the Court concludes that all of the elements set forth in 11 U.S.C. § 547(b) necessary for the avoidance of a preferential transfer are present.

■ The Court now addresses the defense claimed by McElroys. The affirmative defense provided for by § 11 U.S.C. 547(c) (1988) provides as follows:

(c) The trustee may not avoid under this section a transfer—

. . . .

(2) to the extent that such transfer was—

2. The Court does not make an exact calculation due to the uncertainty of fees for administration and other potential costs. Trustee estimates

costs to be $2,000.00. Therefore, approximately $8,000.00 would be available for distribution to creditors.

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms. . . .

11 U.S.C. § 547(c)(2). The primary goal of preference law is to deter " 'the race of diligence' of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section—that of equality of distribution." *Union Bank v. Wolas,* 502 U.S. 151, 112 S.Ct. 527, 533, 116 L.Ed.2d 514 (1991) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 177–78 (1978), reprinted in 1978 U.S.C.C.A.N. 6137–78). The scant legislative history behind section 547(c)(2) provides that section's purpose "is to leave undisturbed normal financial relations, because [such an exception] does not detract from the general policy of the preference section to discourage unusual actions by either the debtor or his creditors during the debtor's slide into bankruptcy." *Marathon Oil Co. v. Flatau (In re Craig Oil Co.),* 785 F.2d 1563, 1565 (11th Cir.1986) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 373–74 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6329).

■ Those asserting this affirmative defense have the burden of proof to establish each elements of Section 547(c)(2) by a preponderance of the evidence. 11 U.S.C. § 547(g). *See Tolz v. Signal Capital Corp. (In re Mastercraft Graphics, Inc.),* 157 B.R. 914, 918 (Bankr.S.D.Fla.1993). McElroys must establish that the transfers were payments (1) on a debt incurred in the ordinary course of business, (2) made in the ordinary course of business of the debtor and creditor, and (3) made according to ordinary business terms. 11 U.S.C. § 547(c)(2). The Court, finding no basis for this defense, will not individually address each element. While Debtor did normally pay $50.00 to $60.00 per month to his parents, payment of $10,000.00 was not done in the ordinary course of the parties' business. The preponderance of the evidence does not support this defense.

## CONCLUSION

This Court, in finding Debtor's payment to his parents to be preferential, does not criticize the nature of such payment. Debtor sought to repay loans made by his parents and did so. The Court finds no intent to defraud other creditors. Rather, the Court finds that Debtor favored his parents over other creditors. Despite the parties' intentions, this is the type of transfer to be avoided as preferential under 11 U.S.C. § 547. The preponderance of the evidence clearly provides that the transfer of $10,000.00 by Debtor to his parents, Ronald and Sandra McElroy, is avoidable as a preferential transfer under 11 U.S.C. § 547(b).

A separate order will be entered in accordance with the foregoing.