859 So.2d 1233 (2003)
PARAGON HEALTH SERVICES, INC., as Assignee of Global Quality Services, Inc., Appellant,
v.
CENTRAL PALM BEACH COMMUNITY MENTAL HEALTH CENTER, INC., d/b/a Central Palm Beach CMHC, Coastal Community Mental Health Center, Inc., d/b/a Coastal CMHC, Albert D. Lopez, Eduardo Godoy, Carlos M. Herrera, Caridad D. Lopez and Marta Dalmau Godoy, Appellees.
No. 4D02-3633.
District Court of Appeal of Florida, Fourth District.
November 12, 2003.
Steven J. Gutter of Kahn & Gutter, Plantation, for appellant.
*1234 Wilfredo A. Rodriguez of Holland & Knight LLP, Miami, for appellees.
WARNER, J.
Paragon, an assignee of judgment creditor Global Quality Services, Inc., appeals the trial court's summary judgment entered against it on its claim of fraudulent transfers. It claims that debtor corporations, Central Palm Beach Community Mental Health Center, Inc. ("Central"), and Coastal Community Mental Health Center, Inc. ("Coastal") made constructively fraudulent transfers of monies to appellees, their officers and directors, and their wives, in violation of chapter 726, the Uniform Fraudulent Transfer Act. The court entered summary judgment finding that the affidavits and depositions conclusively showed that the debtors were not insolvent. Although we conclude that the record showed material issues of fact as to solvency, we conclude that those claims raised pursuant to section 726.106(2), Florida Statutes (2001), regarding transfers to insiders for antecedent debt, are all barred by the applicable statute of limitations. However, we conclude that those claims concerning profit distributions/compensation raised under section 726.106(1) are not barred by the applicable statute of limitations and have not been addressed in the motions or affidavits filed. We therefore affirm in part and reverse in part.
Global recovered a judgment in 2000 against Coastal and Central for contract damages resulting from the provision of consulting services to the two debtor corporations. On June 23, 2000, Paragon, as assignee of Global, filed a third-party complaint against appellees, Albert Lopez, Eduardo Godoy, Carlos Herrera, and the wives of Lopez and Godoy, seeking to avoid transfers of monies to them as fraudulent transfers. That complaint was amended several times, ending with the fourth amended complaint.
There are two versions of the fourth amended complaint in the record. However, both contain essentially the same allegations, the second iteration of the complaint being broken down into two counts. They both allege two different types of transfers between the corporations and the appellees. The first concerns transfers totaling $15,000 from Coastal and $43,000 from Central to each appellee director during 1997, 1998, and 1999, which are described as repayments of antecedent debts. The second are transfers between 1997 and 2000, which are described as profit distributions to the directors for compensation. Paragon alleges these transfers were not compensation and are presumed fraudulent because Global, as judgment debtor, did not receive reasonably equivalent value for the transfers. The amount of these transfers is not stated. As to both transactions, Paragon alleges that Global was a creditor within the meaning of the Fraudulent Transfer Act at the time of the transfers and that Central and Coastal were insolvent at the time. The complaint also joined the wives of two of the directors, because the transferred funds were placed into joint accounts with the wives.[1] The court granted leave to amend to file the fourth amended complaint, and the appellees answered it, addressing all of the allegations, including those regarding appellees' receipt of compensation.
Before the fourth amended complaint was filed, appellees moved for summary judgment on the third amended complaint, simply stating that the allegations of the *1235 complaint were unsupported. After Paragon filed its motion to amend the third amended complaint, attaching a copy of the fourth amended complaint, it too moved for summary judgment. It alleged that a total of eight transfers from Central and Coastal to the appellees, which were designated as loan repayments of antecedent debts, were fraudulent transfers under section 726.106(2). It also claimed that because the funds were deposited into joint accounts, the wives were considered insiders as well. Because of these transfers, the motion alleged that "all third party defendants are liable up to the amounts transferred to them" plus interest. Various copies of the parties' depositions were filed, together with affidavits in support or defense of the cross motions. The cross motions were heard in October 2001. Thereafter, appellees filed a supplemental motion for summary judgment alleging that all of the claims raised by Paragon were based on section 726.106(2) and barred by the statute of limitations contained in section 726.110(3), Florida Statutes (2001). Paragon responded through a letter to the court discussing the statute of limitations.
The court ultimately granted appellees' motion for summary judgment and denied Paragon's motion, concluding that the evidence was undisputed that only two of the five elements required for a fraudulent transfer under section 726.106(2) were met. Paragon filed motions for reconsideration and clarification, both of which were denied, and summary judgment was thereupon entered, resulting in this appeal.

I. Section 726.106(2) transfers are extinguished by the limitations in section 726.110(3).
While we conclude that there is evidence in the record which creates a disputed issue of material fact with regard to the required elements of a fraudulent transfer under section 726.106(2), we nevertheless affirm because the applicable statute of limitations has extinguished the cause of action. Section 726.106(2) provides that:
A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.
The Fraudulent Transfer Act contains its own statute of limitations which "extinguishes" a cause of action under the act, unless an action is commenced:
(1) Under s. 726.105(1)(a), within 4 years after the transfer was made or the obligation was incurred, or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant;
(2) Under s. 726.105(1)(b) or s. 726.106(1), within 4 years after the transfer was made or the obligation was incurred; or
(3) Under s. 726.106(2), within 1 year after the transfer was made or the obligation was incurred.
§ 726.110, Fla. Stat. (2001).
While section 726.110(1) contains a savings provision if the creditor fails to discover the existence of a preferential transfer within the four-year period, for actions based on section 726.105(1)(a) involving actual fraud, there is no such "discovery" provision under section 726.110(3) for transfers to insiders under the constructive fraud provision of section 726.106(2), the section relied upon by Paragon. Where the legislature has included a specific provision in one part of a statute and omitted it in another part, we must conclude that it knows how to say what it means, and its failure to do so is intentional. *1236 See Kraft Gen. Foods, Inc. v. Rosenblum, 635 So.2d 106, 109 (Fla. 4th DCA 1994); Farancz v. St. Mary's Hosp., Inc., 585 So.2d 1151 (Fla. 4th DCA 1991); see also Rakusin, Florida Creditors Rights Manual, Vol. 2, at 259 (2001) (Florida Statutes section 726.110(3) does not provide a savings provision if the creditor fails to discover the preferential transfer, as does section 726.110(1)). Here, the legislature specifically provided a savings clause in section 726.110(1) and omitted it in section 726.110(3). The statute is clear and unambiguous and extinguishes the cause of action under section 726.106(2) one year after the date of the transfer.
The last of the transfers identified by Paragon as repayment of antecedent debt occurred in February 1999. As the third party complaint against the appellees was not filed until June 23, 2000, all of the transfers occurred more than one year prior to the filing of the complaint. Therefore, the cause of action under section 726.106(2) is extinguished.
Paragon cites to Segal v. Rhumbline International, Inc., 688 So.2d 397 (Fla. 4th DCA 1997), for the proposition that this court has held that the one-year period runs from discovery of the transfer. In Segal, we were discussing the limitation contained in section 726.110(1), not 726.110(3), because we referred to the Segals as having "four years from the filing of the UCC statement or one year from discovery of the fraudulent transfer in which to bring suit." Moreover, we were clearly discussing "badges of fraud" which are requirements of a fraudulent transfer under section 726.105. Thus, Segal is distinguishable.

II. Section 726.106(1) transfers were not part of issues raised at summary judgment.
Paragon also argues that the court failed to consider its allegations of preferential profit distributions under section 726.106(1), which has a four-year limitation under section 726.110(2). Regardless of which fourth amended complaint we rely on, each had an allegation that the appellees received payments designated as compensation when they were in fact profit distributions for which Coastal and Central did not receive reasonably equivalent value and were made at a time when the corporate debtors were insolvent. Neither motion for summary judgment mentions these allegations. The court's findings did not address these claims. After the court granted appellee's motion for summary judgment, Paragon moved for clarification, stating that only the count on insider transfers was at issue in the summary judgment proceedings and not the provisions regarding the improper compensation. The court denied the motion for clarification and granted final summary judgment.
It is apparent that the claims of improper profit distributions/compensation were not addressed in either motion or by the court in its final judgment. On appeal, appellees rely on the fact that the two-count fourth amended complaint was not before the court. They do not address the fact that the same allegations were contained in the fourth amended complaint that they answered and specifically denied the allegations regarding profit distribution/compensation.
To support affirmance, appellees also rely on the fact that the court found that the evidence was undisputed that the debtor corporations were not insolvent within the meaning of the statute. However, as we stated in the beginning of our analysis, there was conflicting evidence in the record on the issue of insolvency.
The Uniform Fraudulent Transfer Action defines insolvency as follows: "A *1237 debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." § 726.103(1), Fla. Stat. (2001). This is referred to as the "balance sheet" test. See, e.g., In re McElroy, 228 B.R. 791, 794 (M.D.Fla.1999) (interpreting similar definition of insolvency under Bankruptcy Act to be "balance sheet" test). Because creditors can often find little direct evidence of a debtor's assets and liabilities, the Act also contains a presumption of insolvency where the debtor generally fails to pay his or her debts as they become due. See § 726.103(2); First Fed. Sav. & Loan Ass'n of Galion, Ohio. v. Napoleon, 428 Mass. 371, 701 N.E.2d 350, 354 (1998) (noting that although inability to meet obligations does not conclusively establish insolvency, courts have found this to be reliable indicator of insolvency where there is little direct evidence of debtor's assets and liabilities). This has sometimes been referred to as "equitable insolvency." See Cellar Lumber Co. v. Holley, 9 Ohio App.2d 288, 224 N.E.2d 360, 363 (1967).
For a transferee to prevail on a motion for summary judgment in a fraudulent transfer action on the ground that the debtor was not insolvent at the time of the transfers sought to be avoided, the transferee must show that there is no issue of material fact as to the debtor's solvency. Here, whether we look to the "balance sheet test" or the presumption of insolvency, the evidence is disputed on both. While appellee Godoy filed an affidavit stating that Coastal and Central's assets exceeded their liabilities and that they were paying all "legitimate debts" on time, the deposition testimony paints a different picture. In appellee Herrera's deposition he admitted that even the company providing staffing for Central and Coastal was not paid on a timely basis. Sometimes those payments were three to four months in arrears. He stated, "We paid our bills to the best extent possible," (emphasis added), and he admitted that at the time the companies ceased doing business, they were in considerable debt, including owing the staffing company about one million dollars, as well as debts to other creditors. The evidence is in conflict as to whether the company was substantially in debt and failing to pay its debts as they came due. Thus, the appellees failed to negate the presumption of insolvency of section 726.103(2). The deposition testimony also presents an issue of fact as to whether their assets exceeded their liabilities. See § 726.103(1). As there is a disputed issue of material fact on the issue of insolvency, the record does not support appellee's alternate ground for affirming on the profit distribution/compensation issue. We therefore reverse.
Finally, the appellee wives claimed that they should not be liable for the transfers, which now are limited to the profit distribution/compensation claim under section 726.106(1), simply because the funds were transferred to a bank account which they held jointly with their husbands. Section 726.109(2), Florida Statutes (2001), provides:
[T]o the extent a transfer is voidable in an action by a creditor ..., the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (3), or the amount necessary to satisfy the creditor's claim.... The judgment may be entered against:
(a) The first transferee of the asset or the person for whose benefit the transfer was made; or
(b) Any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee.
Because they are joint owners of the bank account with their husbands, and the compensation/profit *1238 distributions were deposited into those accounts, the wives can be classified as subsequent transferees. As there is no evidence in the record regarding the use of the joint bank account, there remains an issue of material fact as to whether they received any benefit from the transaction to establish liability for the amounts transferred.
The appellees cite to Yusem v. South Florida Water Management District, 770 So.2d 746 (Fla. 4th DCA 2000), for the proposition that depositing money into joint bank accounts is insufficient to hold a wife liable as a subsequent transferee. In Yusem, we held that the wife could not be liable where funds were transferred into the account on one day and transferred out the next day to an offshore account in which the wife had no interest. The wife did not know of the transfers, nor did it appear that she benefitted from the transaction. Here there are no comparable facts. When and how long the funds remained in the joint account and what they were used for is simply absent from this record.
For the foregoing reasons, we affirm the final summary judgment insofar as it disposes of claims under section 726.106(2). We reverse and remand for further proceedings regarding the claim asserted under section 726.106(1) for improper compensation/profit distributions, and we reverse the summary judgment granted in favor of the appellee wives.
GUNTHER and MAY, JJ., concur.
NOTES
[1] Interestingly, the wife of Mr. Herrera was the principal of Global at the time all of these transactions were made. She subsequently divorced him, maintained these suits, and became a receiver for Coastal and Central when they went out of business.