DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STOREY MOUNTAIN, LLC** a/a/o **IBERIABANK,**
Appellant,

v.

**JOHN P. GEORGE,**
Appellee.

No. 4D22-1408

[February 15, 2023]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Jaimie R. Goodman, Judge; L.T. Case No. 502010CA003256XXXXMB.

Paul A. Humbert of Law Offices of Paul A. Humbert, P.L., Miami, for appellant.

Kate E. Watson of The Watson Law Firm, P.A., Jupiter, for appellee.

ARTAU, J.

This case requires us to determine whether the Legislature's adoption by statutory amendment in 2008, of what was previously only a common law presumption in favor of joint spousal bank accounts being tenancy by the entireties property, allows married couples to disclaim entireties ownership designation for such accounts in any written document specifically incorporated by reference into the signature card signed by the depositors upon the opening of the account. We hold that it does and that the joint spousal bank account at issue in this case therefore was not exempt from garnishment by a judgment creditor of only one of the account's depositors.

In 2011, the trial court entered a judgment against John P. George (George). Years later, Storey Mountain LLC (Storey Mountain) sought and obtained issuance of a writ of garnishment directed to PNC Bank, N.A. (the bank), to satisfy the judgment with money which George and his wife held in a joint spousal checking account. The trial court dissolved the writ on motion filed by George, concluding that certain language appearing only in the bank's standard checking account agreement, but not on the face

of the signature card which George and his wife signed upon opening the account, was insufficient to overcome the statutory presumption created by section 655.79(1), Florida Statutes (2011), in favor of the account being entireties property.

Although the signature card which George and his wife signed did not contain any language designating what type of account was opened, it included language indicating that, by signing the document, they agreed to be bound by the terms of the bank's standard checking account agreement (the agreement). Page 9 of the agreement provided:

> FOR ACCOUNTS IN FLORIDA: If an Account is in the names of spouses, you understand, intend and agree that *such an Account is NOT owned as tenants by the entireties* unless otherwise expressly designated on the Account records. *We reserve the right to refuse to allow you to hold the Account as tenants by the entireties, in our discretion.*

(emphasis added).

Notably, this language appeared in a section of the agreement entitled "Joint Accounts," which also expressly advised all joint account owners that their accounts would be held "as joint tenants with the right of survivorship and not as tenants in common."

In dissolving the writ of garnishment, the trial court reasoned that the agreement's language disclaiming entireties ownership for all joint spousal accounts in Florida was akin to the "Welcome Brochure," interpreted in *Beal Bank, SSB v. Almand & Associates*, 780 So. 2d 45 (Fla. 2001), that was insufficient to overcome the presumption in favor of a joint spousal bank account being held as entireties property by the married couple in that case. Thus, because the signature card which George and his wife signed did not expressly disclaim on its face that the account would not be held as entireties property, the trial court concluded that Storey Mountain could not reach the money in the account by garnishment given the binding precedent of *Beal Bank*.

The trial court rejected Storey Mountain's reliance on section 655.79(1), which was amended after the decision in *Beal Bank* to include the following language: "Any deposit or account made in the name of two persons who are husband and wife shall be considered a tenancy by the entirety *unless otherwise specified in writing.*" § 655.79(1), Fla. Stat. (2011) (emphasis added); *see also* ch. 2008-75, § 8, Laws of Fla. (effective Oct. 1, 2008). The trial court reasoned that nothing in the amended

2

statute in any way impacted the precedent in *Beal Bank* as it relates to joint account holders and judgment creditors in garnishment proceedings. We disagree.

Married couples may own property in various ways, including as tenants by the entireties. *See Beal Bank*, 780 So. 2d at 52-53 (noting the various forms of property ownership available to married couples). However, only property held by a married couple as a tenancy by the entireties is exempt from garnishment by the individual creditors of either spouse. *See id.* at 53 ("[W]hen property is held as a tenancy by the entireties, only the creditors of both the husband and wife, jointly, may attach the tenancy by the entireties property; the property is not divisible on behalf of one spouse alone, and therefore it cannot be reached to satisfy the obligation of only one spouse."); *see also Versace v. Uruven, LLC*, 348 So. 3d 610, 612 (Fla. 4th DCA 2022) (tenancy by the entireties property "cannot be garnished by a creditor of one spouse").

In *Beal Bank*, the supreme court explained that "if the signature card of the account does not expressly disclaim the tenancy by the entireties form of ownership," then a joint spousal bank account would be presumed a tenancy by the entireties so long as the account was established in accordance with the six "unities" required at common law for this form of joint property ownership. *Id.* at 58.[1]

*Beal Bank* held that "an express designation on [a] signature card that the account is held as a tenancy by the entireties ends the inquiry as to the form of ownership." *Id.* at 60.

*Beal Bank* also held that "if a signature card does not expressly disclaim a tenancy by the entireties form of ownership," then "a rebuttable presumption arises that a tenancy by the entireties exists provided that all the other unities necessary for a tenancy by the entireties are established." *Id.* "However, if a signature card expressly states that the account is not held as a tenancy by the entireties and another form of legal ownership is expressly designated, no presumption of a tenancy by the entireties arises." *Id.* at 60-61. *Beal Bank* explained that such an "express

---

[1]   At common law, "[p]roperty held as a tenancy by the entireties possesse[d] six characteristics: (1) unity of possession (joint ownership and control); (2) unity of interest (the interests in the account must be identical); (3) unity of title (the interests must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously); (5) survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their joint names)." *Beal Bank*, 780 So. 2d at 52 (footnote omitted).

disclaimer would end the inquiry as to whether a tenancy by the entireties was intended." *Id.* at 61.

The supreme court in *Beal Bank* determined that the accounts at issue were entitled to the benefit of the presumption that they were held by the depositors as entireties property. *Id.* at 62. In reaching this conclusion, the supreme court rejected the argument, with respect to one of the accounts at issue, that the financial institution at which it was held "attempted through its rules and regulations" contained in a "Welcome Brochure" to preclude its depositors "from establishing a tenancy by the entireties." *Id.* at 61. The supreme court determined that the "Welcome Brochure" governed only the relationship between the depositors and the financial institution, and concluded that, "because the signature card did not contain an express disclaimer that the account was not held as a tenancy by the entireties," the brochure's attempt to preclude such an ownership designation on all accounts was not "sufficient to eliminate the presumption in favor of tenancy by the entireties as between the depositor and a third party creditor." *Id.*

While the supreme court made clear in *Beal Bank* that it "hope[d] to bring greater predictability and uniformity to the common law" by its holding, it also "urge[d] the Legislature" to amend section 655.79(1) to codify in Florida's statutory law the common law presumption recognized in the case in favor of joint spousal accounts being entireties property. *Id.* at 62 n.24; *see also Versace*, 348 So. 3d at 613 ("In a footnote in *Beal Bank*, the court suggested to the Legislature that it enact a statutory presumption of tenancy by the entirety in bank accounts held in the name of two spouses.").

In 2008, several years after *Beal Bank* was issued, the Legislature added the last sentence to section 655.79(1), quoted above, thereby codifying in Florida's statutory law the presumption in favor of joint spousal bank accounts being tenancy by the entireties property. *See Versace*, 348 So. 3d at 613 (recognizing that 2008 amendment to section 655.79(1) was enacted in response to *Beal Bank*). However, the Legislature did more in its 2008 amendment than simply codify the holding in *Beal Bank*. *Id.* Instead, as this court recognized in *Versace*, which was decided after the trial court ruled in this case, the Legislature went a step further and codified that all joint spousal accounts are now tenancies by the entireties "as a matter of statutory law, regardless of the presence or absence of the common law requirements of unities" and in the absence of "an express designation" otherwise. *Id.*

4

That is, the plain language of the 2008 amendment to section 655.79(1) eliminated the requirement, previously set forth in *Beal Bank* as an aspect of the common law presumption, that the "unities in the formation of the account" be present. *Id.* at 613-14. Now, "all spousal bank accounts are considered as held by tenan[ts] by the entireties unless otherwise specified in writing" and "[n]o one need establish all the common law unities" in those instances where a third-party creditor seeks to garnish such an account. *Id.* at 614.

The dispositive question in this appeal is what type of "writing" is required by section 655.79(1) to negate the presumptive tenancy by the entireties ownership designation created by the statute for joint spousal bank accounts. George argues that the Legislature intended its 2008 amendment to section 655.79(1) to codify the entirety of the *Beal Bank* decision, including its directive that all disclaimers of entireties ownership of joint spousal bank accounts be expressly made on the signature cards for such accounts. Storey Mountain disagrees, arguing that the Legislature's use of the word "writing" in the 2008 amended statute, rather than the phrase "signature card," a term used elsewhere in the language of the same statutory provision, signals that a different meaning was intended for the word "writing."

We agree with Storey Mountain. While courts are not to "assume the Legislature intended to abrogate prior judicial constructions [of a statute] in the absence of legislative intent" to the contrary, *Potter v. Potter*, 317 So. 3d 255, 258 (Fla. 1st DCA 2021), it is also true that "the [L]egislature is presumed to be acquainted with judicial decisions on the subject concerning which it subsequently enacts a statute." *Ford v. Wainwright*, 451 So. 2d 471, 475 (Fla. 1984).

Section 655.79(1) reads in its entirety following the 2008 amendment:

> Unless otherwise expressly provided in a contract, agreement, or *signature card* executed in connection with the opening or maintenance of an account, including a certificate of deposit, a deposit account in the names of two or more persons shall be presumed to have been intended by such persons to provide that, upon the death of any one of them, all rights, title, interest, and claim in, to, and in respect of such deposit account, less all proper setoffs and charges in favor of the institution, vest in the surviving person or persons. Any deposit or account made in the name of two persons who are husband and wife shall be considered a tenancy by the entirety *unless otherwise specified in writing*.

5

§ 655.79(1), Fla. Stat. (2011) (emphasis added).[2]

"When the language of [a] statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." *A.R. Douglass, Inc. v. McRainey*, 137 So. 157, 159 (Fla. 1931); *see also, e.g., W. Fla. Reg'l Med. Ctr., Inc. v. See*, 79 So. 3d 1, 9 (Fla. 2012) (courts apply the "unequivocal meaning" of a statute's "clear and unambiguous" text, and do "not resort to the rules of statutory interpretation and construction" where the language of the statute "conveys a clear and definite meaning"). "This is so because the Legislature is assumed to know the meaning of the words used in the statute and to have expressed its intent through the use of the words." *Wyche v. State*, 232 So. 3d 1117, 1120 (Fla. 1st DCA 2017) (citing *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 945 So. 2d 1216, 1225 (Fla. 2006)).

As a result, when determining statutory meaning, all language in a statutory provision "must be considered in determining legislative intent[,]" and "[e]ffect must be given to every part of the section and every part of the statute as a whole." *State v. Rodriquez*, 365 So. 2d 157, 159 (Fla. 1978); *see also, e.g., Montgomery v. State*, 897 So. 2d 1282, 1286 (Fla. 2005) ("Generally, all parts of the statute must be read together."). In fact, "[i]t is a cardinal rule of statutory interpretation that courts should avoid readings that would render part of a statute meaningless." *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 456 (Fla. 1992); *see also, e.g., Montgomery*, 897 So. 2d at 1286 ("Where possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another.'" (quoting *Forsythe*, 604 So. 2d at 455)).

Thus, when the Legislature "has included a specific provision in one part of a statute and omitted it in another part," courts are instructed to presume that the Legislature "knows how to say what it means" and that the differentiation in the language "is intentional." *Paragon Health Servs., Inc. v. Cent. Palm Beach Mental Health Ctr., Inc.*, 859 So. 2d 1233, 1235 (Fla. 4th DCA 2003); *see also, e.g., Myers v. Hawkins*, 362 So. 2d 926, 929 (Fla. 1978) (courts should presume that statutory "language differentiation" is "intentional"); *Ocasio v. Bureau of Crimes Comp. Div. of Workers' Comp.*, 408 So. 2d 751, 753 (Fla. 3d DCA 1982) (Legislature's "deliberate use" of "quite different term[s]" in the same statutory provision is "strong evidence" that it intended "different meaning").

---

[2] The statute has not been revised or amended since the 2008 amendment.

The Legislature's use of the word "writing" in the 2008 amendment to section 655.79(1), which is clearly broader than the narrower phrase "signature card" already present in the statute, means that *Beal Bank*'s holding—that all disclaimers of entireties ownership of joint spousal bank accounts be expressly made on signature cards—was not adopted by the Legislature when it otherwise codified the entireties presumption for such accounts through the amendment. Moreover, as Storey Mountain points out, the Legislature's statutory definition of the term "writing," to include "handwriting, printing, typewriting, and all other methods and means of forming letters and characters upon paper, stone, wood, or other materials," is broad enough to encompass the agreement incorporated by reference into the terms of the signature card in this case. § 1.01(4), Fla. Stat. (2011) (defining the word "writing").[3]

Stated another way, the Legislature's choice of the word "writing" over the phrase "signature card" in the 2008 amendment signifies an intent to authorize disclaimers of entireties ownership on more than just "signature cards," contrary to *Beal Bank*'s holding with respect to the "Welcome Brochure" disclaimer in that case. *See Fla. State Racing Comm'n v. McLaughlin*, 102 So. 2d 574, 576 (Fla. 1958) ("The use by the Legislature of [a] comprehensive term indicates an intent to include everything embraced within the term."). As a result, George's argument that the Legislature simply codified *Beal Bank*'s holding with respect to entireties disclaimers on anything but signature cards is inconsistent with the plain language of section 655.79(1).

Even if the Legislature may have meant something "'not expressed in the phraseology of the act,' [this] court is not authorized to 'depart from the plain meaning of the language which is free from ambiguity'" because "constru[ing] the clear language of [a] statute" contrary to its plain meaning "would impermissibly usurp the power of the [L]egislature." *Forest Brooke/Hillsborough, LLC v. Henriquez*, 194 So. 3d 1091, 1093 (Fla. 2d DCA 2016). In other words, "courts must presume that a [L]egislature says in a statute what it means and means in a statute what it says there." *Vargas v. Enter. Leasing Co.*, 993 So. 2d 614, 618 (Fla. 4th DCA 2008)

---

[3] The Legislature's inclusion in the Florida Statutes of a definition for the term "writing" obviates the need for us to resort to an extraneous source, such as a dictionary, to determine the meaning of the word in context. *Cf. Gyongyosi v. Miller*, 80 So. 3d 1070, 1075 (Fla. 4th DCA 2012) ("When a term is *not* defined, courts must look to its plain and ordinary meaning, which can be discerned from a dictionary." (emphasis added)).

(quoting *Garcia v. Vanguard Car Rental USA, Inc.*, 510 F. Supp. 2d 821, 829-30 (M.D. Fla. 2007)).

Our plain reading of the 2008 amendment to section 655.79(1) thus demonstrates that an entireties ownership disclaimer for a joint spousal bank account may appear in any "writing," including any written integrated document incorporated by reference into a signature card as occurred in this case. The unambiguous language on page 9 of the incorporated agreement specifically disclaimed entireties ownership of the disputed joint spousal account in favor of the account being a joint tenancy with right of survivorship, thereby making it subject to garnishment to satisfy the judgment entered against only George and not he and his wife jointly. We therefore reverse the order dissolving the writ of garnishment as it is inconsistent with the disclaimer of entireties ownership for the joint spousal account set forth in the "writing" incorporated by reference into the signature card which George and his wife signed when they opened the account. We remand for further proceedings consistent with this opinion.

*Reversed and remanded with instructions.*

CIKLIN and LEVINE, JJ., concur.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***