# Third District Court of Appeal

## State of Florida

Opinion filed January 28, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-0911
Lower Tribunal No. F16-21845B
_____

**Carlos Mojica,**
Appellant,

vs.

**State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Miguel M. de la O, Judge.

Carlos J. Martinez, Public Defender, and Shannon Hemmendinger, Assistant Public Defender, for appellant.

James Uthmeier, Attorney General, and Ivy R. Ginsberg and Katryna Alexis Santa Cruz, Assistant Attorneys General, for appellee.

Before FERNANDEZ, LOGUE and LINDSEY, JJ.

LOGUE, J.

Defendant below, Carlos Mojica, appeals his conviction and sentence

for the offense of child abuse causing no great bodily harm under section 827.03, Florida Statutes (2016), a third-degree felony. In particular, Mojica was charged with "[a]n intentional act that could reasonably be expected to result in . . . mental injury to a child." § 827.03(1)(b)2., Fla. Stat. (2016). He challenges his conviction contending the statute defining "mental injury" expressly requires that "mental injury" be "supported by expert testimony," which the State failed to provide at trial. We agree and reverse.

## Background

Mojica was charged with the first-degree felony murder of an adult, Vicki T. Feeley, and child abuse causing no great bodily harm to a child, C.T. The child's mother, Liz Corcho, was a co-defendant in the case and pled guilty to a reduced charge of second-degree murder in exchange for testifying against Mojica.

Corcho testified that she and Mojica followed Feeley from a store to her home with the intent of robbing her. Initially, Mojica drove the vehicle they used with Corcho sitting in the passenger seat, and Corcho's three-year-old child, C.T., positioned between them. When they reached Feeley's neighborhood, however, Corcho and Mojica switched seats so that Mojica could rob Feeley and Corcho could act as the get-away driver.

At Feeley's driveway, Mojica jumped out of the pickup truck, leaving

2

the passenger door open. Mojica attacked Feeley; Feely began screaming; and C.T. began crying hysterically. Mojica jumped into the passenger seat with Feeley's purse and told Corcho to take off. She accelerated even before Mojica could close the door. Corcho did not feel any bump when she drove off. In the commotion, one of C.T.'s shoes was left at the scene.

Other evidence established that while Feeley lay screaming on the ground, the truck ran over her head, crushing her skull and killing her. Regarding the child abuse charge, the State's theory was that Mojica's action in taking C.T. with him to a planned robbery where he attacked the screaming victim, ultimately leading to the victim's murder under gruesome circumstances, qualified as an intentional act that could reasonably be expected to result in mental injury to the child. The State, however, failed to put on any expert testimony in this regard.

As to the child abuse charge, the trial court instructed the jury as follows:

> To prove the crime of Child Abuse, the State must prove the following two elements beyond a reasonable doubt:
>
> 1. Carlos Mojica knowingly and willfully abused C.T. by committing an intentional act that could reasonably be expected to result in . . . mental injury to C.T.
>
> 2. C.T. was under the age of 18 years.

3

"Willfully" means intentionally and purposely.

"Mental injury" means an injury to the intellectual or psychological capacity of a child as evidenced by a discernible and substantial impairment in the ability to function within the normal range of performance and behavior as supported by expert testimony.

The jury found Mojica guilty of first-degree felony murder and child abuse as charged. The trial court adjudicated Mojica guilty as to both charges and thereafter sentenced him. In the course of the trial, Mojica timely moved for a judgment of acquittal on the child abuse charge which was denied. Mojica appeals only his conviction and sentence for child abuse.

## Standard of Review

"When the defendant in a criminal appeal challenges the sufficiency of the State's evidence, the appellate court conducts a <u>de novo</u> review of the trial record to ensure that the guilty verdict is supported by competent, substantial evidence regarding each element of the charged crime." <u>Garcia v. State</u>, 373 So. 3d 1213, 1222 (Fla. 3d DCA 2023) (quoting <u>Rodriguez v. State</u>, 335 So. 3d 168, 171 (Fla. 3d DCA 2021)). Likewise, a trial court's interpretation of a statute is reviewed de novo. <u>See</u> <u>State v. Lacayo</u>, 8 So. 3d 385, 386-87 (Fla. 3d DCA 2009) ("Generally, the interpretation of a statute is purely a legal matter subject to de novo review. In interpreting a statute, legislative intent is the 'polestar' that guides a reviewing court in its analysis.

4

We initially determine legislative intent by construing the statute['s] plain and ordinary meaning.") (internal citations omitted).

## Analysis

Mojica contends the trial court erred by denying his motion for judgment of acquittal as to the child abuse charge because the State failed to present expert testimony as to the alleged mental injury that Mojica's intentional act "could reasonably be expected to result in." Because this case turns entirely on statutory construction, a review of the text of the governing statutes is in order.

Section 827.03(2)(c), Florida Statutes (2016), criminalizes child abuse, and provides:

> (2) Offenses.--
>
> . . . .
>
> (c) A person who knowingly or willfully abuses a child without causing great bodily harm, permanent disability, or permanent disfigurement to the child commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Subsection (1)(b) defines "child abuse" as follows:

> (b) "Child abuse" means:
>
> 1. Intentional infliction of physical or mental injury upon a child;
>
> 2. **An intentional act that could reasonably be expected to result in physical or mental injury to**

5

**a child**; or

> 3.     Active encouragement of any person to commit an act that results or could reasonably be expected to result in physical or mental injury to a child.

(emphasis added). Here, Mojica was convicted of "child abuse" as defined in section 827.03(1)(b)2.

Further, subsection (1)(d) defines "mental injury" as follows:

> (d) "Mental injury" means injury to the intellectual or psychological capacity of a child **as evidenced by** a discernible and substantial impairment in the ability of the child to function within the normal range of performance and behavior **as supported by expert testimony**.

(emphases added).

Finally, subsection (3) restricts the type of expert that can provide the needed expert testimony and provides that the requirement of expert testimony applies only to criminal child abuses cases and not to family cases:

> (3) Expert testimony. --
>
> (a) Except as provided in paragraph (b), a physician may not provide expert testimony in a criminal child abuse case unless the physician is a physician licensed under chapter 458 or chapter 459 or has obtained certification as an expert witness pursuant to s. 458.3175 or s. 459.0066.
>
> (b) A physician may not provide expert testimony in a criminal child abuse case regarding mental injury unless the physician is a physician licensed under chapter 458 or chapter 459 who has completed an accredited residency in psychiatry or has obtained

6

certification as an expert witness pursuant to s. 458.3175 or s. 459.0066.

(c) A psychologist may not give expert testimony in a criminal child abuse case regarding mental injury unless the psychologist is licensed under chapter 490.

(d) The expert testimony requirements of this subsection apply only to criminal child abuse cases and not to family court or dependency court cases.

The provisions in the statute defining "mental injury," limiting the experts who can provide such testimony, and restricting the expert testimony requirements solely to criminal child abuse cases were added in 2012. See Ch. 2012-155, § 9, Laws of Fla. Prior to the 2012 amendments, courts relied on the definition of "mental injury" set forth in section 39.01, Florida Statutes. See Zerbe v. State, 944 So. 2d 1189, 1193 (Fla. 4th DCA 2006) (relying on definition of "mental injury" in section 39.01, Florida Statutes, in criminal child abuse prosecution under section 827.03). The definition of "mental injury" in section 827.03(1)(d) significantly mirrors the definition of "mental injury" in section 39.01, except for one crucial difference—in section 827.03(1)(d), the definition of mental injury for criminal cases ends with the words "as supported by expert testimony."

In arguing that no need existed for expert testimony on mental injury in this case, the State asks us to focus on the difference between subsections

7

(1)(b)1. and (1)(b)2. Subsection (1)(b)1. criminalizes abuse that intentionally inflicts actual mental injury. On the other hand, subsection (1)(b)2., under which Mojica was convicted, does not require the intentional infliction of an actual mental injury. Rather, subsection (1)(b)2. only requires an "intentional act that could reasonably be expected to result in mental injury." § 827.03(1)(b)2. The State asks us to interpret subsection (1)(d)'s definition of mental injury as applying only to "mental injury" as used in subsection (1)(b)1., not to "mental injury" as used in subsection (1)(b)2. The State argues that, while it may make sense to require expert testimony regarding an actual injury under subsection (1)(b)1., it makes little sense to require expert testimony about whether an intentional act could reasonably be expected to result in mental injury to a child under subsection (1)(b)2. The State suggests the definition of "mental injury," which uses the phrase "as evidenced by" signals the Legislature's intent to restrict the definition to subsection (1)(b)1.

We agree with the State that subsection (1)(b)2. does not require an act that results in actual "mental injury." See Zerbe, 944 So. 2d at 1193 ("The offense of child abuse under subsection (b)[2.] does not require proof of actual injury; rather, the offense includes any act that is done intentionally that could reasonably be expected to cause mental injury."). But we decline

to adopt its proposed interpretation.

The text of subsection (1)(b)2. required the State to establish that Mojica's "intentional act" "could reasonably be expected to result in . . . mental injury to a child." The definition of "mental injury" in subsection (1)(d) requires "mental injury" to be supported by expert testimony. A straightforward, literal reading of the statute therefore indicates that the State was required to show that the mental injury which the intentional act was reasonably expected to cause must be "supported by expert testimony."

There is no indication that the Legislature intended subsection (1)(d)'s definition of "mental injury" to apply to the term in one subsection of the definition of child abuse but not the others. Certainly, the language relied upon by the State, "as evidenced by," does not so indicate. The Legislature was aware that courts had been applying the definition of "mental injury" in section 39.01 when addressing felony child abuse under section 827.03. The Legislature, nonetheless, decided to include the language "as supported by expert testimony" in the definition of "mental injury" and spent considerable effort delimiting the nature of the expert testimony required. These amendments simply reflect the Legislature's determination that a heightened evidentiary burden – support by the testimony of particularly qualified experts – is appropriate before a person is convicted of these crimes.

9

Given the care the Legislature took to establish and cabin the requirement of expert testimony in this regard, it is plain that if the Legislature intended (1)(d)'s definition of "mental injury" to apply only to (1)(b)1., it could have easily said so. See Storey Mountain, LLC v. George, 357 So. 3d 709, 714 (Fla. 4th DCA 2023) (stating that the legislature "knows how to say what it means" (quoting Paragon Health Servs., Inc. v. Cent. Palm Beach Cmty. Mental Health Ctr., Inc., 859 So. 2d 1233, 1235 (Fla. 4th DCA 2003))).

Mojica's conviction for child abuse was not supported by sufficient evidence because it lacked the expert testimony required by the governing statute. Therefore, we reverse Mojica's conviction and sentence for felony child abuse.

Reversed.

FERNANDEZ, J., concurs.

10

LINDSEY, J., dissenting.

I respectfully dissent and would affirm Mojica's conviction and sentence for felony child abuse.

Section 827.03, Florida Statutes (2016), criminalizes child abuse.[1] Subsection (1)(b) provides three independent theories of prosecution for "child abuse":

1. Intentional infliction of physical or mental injury upon a child;

2. **An intentional act that could reasonably be expected to result in** physical or **mental injury** to a child; or

3. Active encouragement of any person to commit an act that results or could reasonably be expected to result in physical or mental injury to a child.

§ 827.03(1)(b), Fla. Stat. (2016) (emphasis supplied).

Subsection (1)(d), defines "mental injury" as follows:

(d) "Mental injury" means injury to the intellectual or psychological capacity of a child as evidenced by a discernible and substantial impairment in the ability of the child to function within the normal range of performance and behavior **as supported by expert testimony**.

---

[1] "A person who knowingly or willfully abuses a child without causing great bodily harm, permanent disability, or permanent disfigurement to the child commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084." § 827.03(2)(c), Fla. Stat. (2016).

11

§ 827.03(1)(d).[2]

The Majority holds the "mental injury" definition applies to subsection (1)(b)2, such that the State must prove the precise mental injury—through expert testimony—that the intentional act could reasonably be expected to cause. Applying this construction of section 827.03, the Majority reverses Mojica's conviction under section 827.03(1)(b)2 for insufficient evidence because it was not supported by such expert testimony. I would not.

The interplay between subsection (1)(b)'s three independent bases of child abuse demonstrates that subsection (1)(d)'s mental injury definition, and its requirement of expert testimony, applies **only** to the subsection where proof of actual mental injury is a required element of the offense—*i.e.*, subsection (1)(b)1, and (1)(b)3. Our most fundamental canons of statutory construction compel this conclusion.

Under the surplusage canon, "courts should avoid readings that would render part of a statute meaningless." Unruh v. State, 669 So. 2d 242, 245 (Fla. 1996); see also Antonin Scalia & Bryan A. Garner, Reading Law: The

---

[2] The Florida Legislature amended section 827.03 to add the definition of "mental injury." Prior to amendment, mental injury was undefined in section 827.03. See Ch. 2012-155, § 9, Laws of Fla. ("[A]mending s. 827.03, F.S.; defining the term 'mental injury' with respect to the offenses of abuse, aggravated abuse, and neglect of a child.").

Interpretation of Legal Texts 174 (2012) (citation omitted) ("[E]very provision is to be given effect" and "[n]one should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence."). This canon works in tandem with the harmonious-reading canon, for the basic tenet of statutory interpretation that a "statute should be interpreted to give effect to every clause in it, and to accord meaning and harmony to all of its parts." D.M.T. v. T.M.H., 129 So. 3d 320, 332 (Fla. 2013); see also Scalia & Garner, supra, at 180 ("[H]armony among provisions is more categorical than most other canons of construction because it is invariably true that intelligent drafters do not contradict themselves.").

Consider, first, the plain language and structure of section 827.03(1). Subsection (1)(d) defines actual "mental injury," *i.e.*, "injury to the intellectual or psychological capacity of a child . . . ." § 827.03(1)(d). This subsection then proceeds to set forth how the State proves the injury— "discernible and substantial impairment in the ability of the child to function within the normal range of performance and behavior as supported by expert testimony." Id.

Subsection (1)(b)2, though, does not require an act that results in mental injury nor proof of actual mental injury. Indeed, the Majority concedes this point. Rather, subsection (1)(b)2 only requires proof of an "**intentional act** that could reasonably be expected to result in mental injury." §

13

827.03(1)(b)2. (emphasis supplied). It follows, that if proof of actual mental injury is not required under this subsection, the State need not present expert testimony of the proof of that injury. Accordingly, the definition of "mental injury" in subsection (1)(d), which necessarily calls for proof of mental injury, does not apply here.

Nonetheless, the Majority argues that because subsection (1)(b)2 uses the term "mental injury," the State must present expert testimony of the precise "mental injury" that the intentional act was reasonably expected to cause. The issue with this interpretation is that subsection (1)(d)'s mental injury definition is founded upon proof of a "discernible and substantial impairment"; not proof of what "could reasonably be expected."[3] As a result,

---

[3] The plain language of the definition requires this strict construction. The phrase "as evidenced by" operates as a modifier between the claimed injury— "injury to the intellectual or psychological capacity of a child" —and its proof— "a discernible and substantial impairment[.]" See § 827.03(1)(d); accord State v. Lauriston, 295 So. 3d 281, 284 (Fla. 4th DCA 2020) ("Under the nearest-reasonable-referent doctrine, 'whether coming before or after what is modified, modifiers (adjectives, adverbs, prepositional phrases, restrictive clauses) should be read as modifying the nearest noun, verb, or other sentence element to which they can reasonably be said to pertain.'"). The definition further modifies proof of the injury—i.e., discernible and substantial impairment—with the phrase "as supported by expert testimony." Finally, the word "means," signals an exhaustive definition under the interpretative-direction canon. In other words, the clear import of subsection (1)(d)'s "mental injury" definitional section is that this is its only meaning when it is an element of an offense in section 827.03. See Scalia & Garner, supra, at 226 (emphasis in original) ("When . . . a definitional section says that a word 'means' something, the clear import is that this is its **only** meaning.").

14

applying the definition of "mental injury" to subsection (1)(b)2 in this manner tacks on an extra element to subsection (1)(b)2—expert proof of defined discernible and substantial impairments.

Consequently, under both subsection (1)(b)1 and (1)(b)2, the State would effectively have to litigate, through experts, proof of defined discernible and substantial impairments and how such impairments evidence a precise mental injury. This reading collapses the State's evidentiary burden in subsections (1)(b)1 and (1)(b)2 into mere mirrors of each other— as it relates to mental injury—and ignores the textual structure of these subsections as separate prosecutorial theories of child abuse.

In other words, the Majority's construction imports the mental injury definition into subsection (1)(b)2 as a required element, giving that subsection a meaning with an effect already achieved by subsection (1)(b)1.

Applying these canons, the definition's most natural reading is that "as evidenced by" and "as supported by" work together as stacked modifiers of their nearest sentence elements, and the word "means" limits the manner the defined term can be satisfied when it is an element of an offense. That is, a precise mental injury must be evidenced by discernible and substantial impairment, and that impairment must be supported by expert testimony. This eliminates the possibility that mental injury, as an element of an offense, can be satisfied by expert testimony of the mere reasonable probability of an unspecified mental injury without delineating the impairments that generally evidence that injury.

It deprives subsection (1)(b)2 of its independent effect—a separate prosecutorial theory obviating the State's need to present expert proof of discernible and substantial impairments and how such impairments evidence a mental injury. It renders subsection (1)(b)2 meaningless within the structure of section 827.03(1). Cf. Patino v. State, 390 So. 3d 164, 168 (Fla. 3d DCA 2024) (quotation omitted) ("[C]ourts should avoid readings that would render part of a statute meaningless."). This absurd result is precisely what the surplusage canon disfavors.[4]

To avoid this surplusage, we must harmonize subsections (1)(b)1 and (1)(b)2 in a manner that leaves both with some independent operation. In this vein, the definition of mental injury—and its requirement of expert testimony on impairments evidencing a particular mental injury—should only apply when actual mental injury is a required element of the offense. When actual mental injury is not a required element of an offense—as when

_____

[4] "If a provision is susceptible of (1) a meaning that gives it an effect already achieved by another provision, or that deprives another provision of all independent effect, and (2) another meaning that leaves both provisions with some independent operation, **the latter should be preferred**." Commodore, Inc. v. Certain Underwriters at Lloyd's London, 342 So. 3d 697, 703 (Fla. 3d DCA 2022) (emphasis supplied) (quoting Scalia & Garner, supra, at 176).

16

establishing the reasonable probability of mental injury under subsection (1)(b)2—the definition should not apply.

Under this plain reading of the statute, when proceeding under section 827.03(1)(b)1, the State is required to provide proof—through qualified expert testimony—of an actual mental injury evidenced by the existence of discernible and substantial impairments in the child. By contrast, when proceeding under section 827.03(1)(b)2, actual mental injury is not a required element of the offense. Thus, it follows, expert testimony is not required to prove the precise "mental injury" that the intentional act could reasonably be expected to cause.

Simply put, section 827.03(1)(b)2 does not require proof of actual mental injury. Therefore, the State does not have to present expert testimony of mental injury.

Here, applying this harmonious reading of subsection (1)(b)2, Mojica's conviction is supported by competent, substantial evidence.[5] Mojica was convicted under section 827.03(1)(b)2. As the Majority lays out in gruesome painstaking detail, the State presented evidence establishing that Mojica

---

[5] "When the defendant in a criminal appeal challenges the sufficiency of the State's evidence, the appellate court conducts a de novo review of the trial record to ensure that the guilty verdict is supported by competent, substantial evidence regarding each element of the charged crime." Garcia v. State, 373 So. 3d 1213, 1222 (Fla. 3d DCA 2023).

took C.T. with him to a planned robbery where he attacked a screaming victim, ultimately leading to the victim's murder under gruesome circumstances in C.T.'s presence. This is more than enough competent, substantial evidence to prove that Mojica's intentional acts "could reasonably be expected to result in mental injury" to C.T. and convict Mojica under section 827.03(1)(b)2.

Accordingly, for the reasons explained above, I respectfully dissent and would affirm Mojica's conviction and sentence for felony child abuse.